**Mirdash KAMBOLLI, Petitioner,**

v.

**Alberto GONZALES, Attorney General,\* Respondent.**

**Docket No. 03–40411–AG.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 11, 2006.

Decided: May 26, 2006.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto Gonzales is substituted for his predecessor, Attorney General John Ashcroft, as the respondent in this case.

Glenn T. Terk, Wethersfield, CT, for Petitioner.

Charles T. Harden III, Assistant United States Attorney (Paul I. Perez, United States Attorney for the Middle District of Florida, Karin B. Hoppmann, Assistant United States Attorney, on the brief), United States Attorney's Office for the Middle District of Florida, Tampa, FL, for Respondent.

Before: WINTER, CABRANES, and SACK, Circuit Judges.

PER CURIAM.

We consider here whether we have jurisdiction to review a decision by a member of the Board of Immigration Appeals ("BIA" or "Board") unilaterally to affirm without opinion a decision of an immigration judge ("IJ") pursuant to the BIA's "streamlining" procedures codified at 8 C.F.R. § 1003.1(e) rather than to refer the case to a three-member panel of the BIA.

Petitioner Mirdash Kambolli, a native and citizen of Albania, seeks review of a July 29, 2003 decision of the BIA affirming without opinion a November 15, 2001 decision of IJ Michael W. Straus denying

Kambolli's request for asylum, as well as for withholding of removal under Section 241(b)(3) of the Immigration and Naturalization Act of 1952 ("INA"), as amended, 8 U.S.C. § 1231(b)(3), and the United Nations Convention Against Torture ("CAT").[1] *See In re Kambolli,* File No. A 79 331 552 (BIA June 29, 2003); *See In re Kambolli,* File No. A 79 331 552 (Immig. Ct., Hartford, Nov. 15, 2001).

On appeal, Kambolli argues that (1) the IJ erred in finding that Kambolli neither suffered past persecution nor possessed a well-founded fear of future persecution and therefore was not eligible for asylum or withholding of removal under the INA; (2) the IJ erred in denying Kambolli's CAT claim; and (3) the Board member who reviewed the IJ's decision erred in unilaterally affirming it without opinion, rather than referring it to a three-member panel of the BIA. We first address the merits of Kambolli's asylum, INA withholding, and CAT claims and then examine whether we have jurisdiction to review the Board member's streamlining decision, which is a question of first impression in this Circuit.

## I. The IJ's Decision To Deny Asylum and Withholding of Removal Under the INA

■ When the BIA affirms an IJ's decision without opinion pursuant to the "streamlining" provision codified at 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision as the final agency determination. *See, e.g., Yu Sheng Zhang v. DOJ,* 362 F.3d 155, 158–59 (2d Cir.2004). We first address Kambolli's challenge to the IJ's denial of his application for asylum. Under the INA, the Attorney General may grant asylum to persons meeting the definition of "refugee." *See* 8 U.S.C. § 1158(b) (providing discretion to Attorney General); *Id.* § 1101(a)(42) (defining "refu-

gee"). We review an IJ's factual findings for "substantial evidence." *See, e.g., Majidi v. Gonzales,* 430 F.3d 77, 81 (2d Cir. 2005); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]").

■ Kambolli based his request for asylum on the following allegations, which are drawn from his application and his testimony before the IJ. After the fall of Albania's communist government in 1991, Kambolli joined the Democratic Party, which contended with the Socialist Party for political supremacy in the country. Active in Democratic Party politics, Kambolli became a local party leader and eventually ran in his village for an office that he describes as being equivalent to an American mayoralty. He defeated the incumbent Socialist Party mayor, but the incumbent refused to surrender the office on the ground that he did not accept the results of the election. As required by Albanian law, Kambolli appealed to the region's governor, a Socialist Party official who summarily rejected the appeal. Because of local corruption, Kambolli allegedly knew that recourse to the courts would be futile.

Thereafter, Kambolli returned home and there was threatened by four policemen who came to his house. The officers, one of whom Kambolli recognized as a local Socialist, told him to abandon his quest for office or leave Albania; otherwise, Kambolli was informed, the police would "damage" him or his family. Kambolli then moved with his family to another Albanian city, where he stayed a few months, until coming to the United States and overstaying his visa.[2]

---

1. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984,

1465 U.N.T.S. 85, S. Treaty Doc. No. 100–20 (1988); *see also* 8 C.F.R. § 1208.16(c) (implementing the CAT).

In support of his claim that he suffered persecution, Kambolli alleged also that (1) his house was vandalized by Socialist Party operatives; (2) Democratic Party members are often harassed and occasionally killed on account of their political activity; and (3) he is a sufficiently well-known party leader that he would be attacked if he returned to Albania. In addition to the relevant testimony and newspaper articles recounting conditions in Albania, the State Department Profile of Asylum Claims and Country Report was introduced into the record before the IJ.

█ The IJ found that the mistreatment Kambolli allegedly suffered, while unfortunate, did not rise to persecution because there was "no evidence in the record that [he] was at all harmed in Albania for any reason." Largely because Kambolli and his family were left alone after moving elsewhere in Albania, the IJ determined that Kambolli had no well-founded fear of future persecution, stating that "there's simply not enough evidence to show that he'd be singled out if he had to return to Albania." Accordingly, the IJ rejected Kambolli's asylum claim and also denied his request for withholding of removal under the INA.[3] Reviewing the IJ's legal conclusions *de novo*, we hold that the IJ correctly denied Kambolli's asylum claim— based on a finding that the facts testified to by Kambolli did not constitute persecution and that Kambolli did not demonstrate a well-founded fear of persecution— in light of the following facts established in the record: (1) there was a lack of physical harm to Kambolli; (2) Kambolli successfully evaded trouble by relocating within Albania; and (3) Kambolli's only direct run-in with authorities consisted of a single threatening meeting with local police.[4] *See, e.g., Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993) (Alito, J.) ("[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional.").

Because Kambolli did not demonstrate his eligibility for asylum, the IJ did not err in determining that Kambolli failed to meet his burden to establish entitlement to withholding of removal under the INA. *See Abankwah*, 185 F.3d at 22.

## II. Kambolli's CAT Claim

█ As Kambolli did not raise his CAT claim on appeal to the BIA, he has failed to exhaust his administrative remedies before the Board and therefore has waived his CAT claim on appeal to this Court. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right."); *Foster v. INS*, 376 F.3d 75, 78 (2d Cir.2004) ("[W]e require '[p]etitioner to raise *issues* to the BIA in order to preserve them for judicial review.'" (quoting *Cervantes–Ascencio v. INS*, 326 F.3d 83,

2. Kambolli received a visa to enter the United States after informing a consular officer of his plan to attend "an international fertilizer marketing program." He later admitted that he never intended to attend the twenty-day training program and that, in any event, he did not attend.

3. An applicant who cannot demonstrate the requisite past persecution or well-founded fear of future persecution needed to support an asylum claim necessarily cannot establish that he is entitled to withholding of removal under the INA. *See, e.g., Abankwah v. INS*, 185 F.3d 18, 22 (2d Cir.1999).

4. Although it does not affect our disposition of the petition before us, we note that since the BIA's affirmance of the IJ's decision denying Kambolli's application, the Democratic Party has won national elections in Albania and returned to power. *See Latifi v. Gonzales*, 430 F.3d 103, 106 n. 1 (2d Cir.2005).

87 (2d Cir.2003)) (emphasis and second alteration in original)). Kambolli's petition for review must therefore be denied to the extent it seeks review of his CAT claim.

### III. Jurisdiction To Review the BIA Member's Decision To Affirm the IJ's Order Unilaterally

Kambolli argues that the Board member reviewing his appeal erred in unilaterally affirming the IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), instead of referring the case to a three-member panel. The argument is, in essence, that because the IJ made significant errors, affirmance without opinion by a single Board member acting alone under the Board's "streamlining" regulations—without reference to a three-member BIA panel—is not appropriate. We consider here whether an aggrieved applicant's challenge to a single member's decision to dispose of a case unilaterally presents a reviewable question separate from the applicant's general request for review of the underlying merits of the claims he presented to the IJ.

### A. Origin, Development, and Practical Details of the "Streamlining" Program

The Department of Justice promulgated the "streamlining" regulations, which are codified at 8 C.F.R. § 1003.1(e), in response to a crushing backlog of immigration appeals. See Executive Office for Immigration Review; Board of Immigration Appeals: Streamlining, 64 Fed.Reg. 56,-135, 53,136 (Oct. 18, 1999) (enacting streamlining rules and noting that BIA received "fewer than 3,000 new appeals

and motions" in 1984 and received "in excess of 28,000 new appeals and motions" in 1998); Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed.Reg. 54,878, 54,878 (Aug. 26, 2002) (amending streamlining rules and noting that the "pending caseload on September 30, 2001[ ] totaled 57,-597 cases"); see also id. at 54,879 (raising "concern that many appeals have been filed precisely to take advantage of [the] delay" under the prior policy of referring all cases to three-member panels, because cases "have routinely remained pending ... for more than two years, and some cases have taken more than five years to resolve"). The backlog has since been reduced by about half. See note 18, post.

The BIA's "streamlining" regulations for adjudicating those appeals of IJ orders not dismissed for procedural default or similar reasons (i.e., those appeals receiving merits review by the BIA) are set forth at 8 C.F.R. § 1003.1(e)(3)-(6). Under the regulations,

[t]he Board member to whom a case is assigned[5] shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that

(A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or

(B) The factual and legal issues raised on appeal are not so substantial that the

---

5. All appeals proceed initially to a "screening panel [of BIA members] for review." 8 C.F.R. § 1003.1(e)(1). An appeal entitled to review on the merits is transferred by the screening panel to a single BIA member, who receives the record and transcript of the proceedings before the IJ. Id. § 1003.1(e)(3). The BIA member then decides the appeal himself or refers it to a three-member panel.

case warrants the issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4).

Conversely, the regulations provide that a case

may *only* be assigned [by the single member originally assigned to dispose of the appeal] for review by a three-member panel if the case presents one of these circumstances:

(i) The need to settle inconsistencies among the rulings of different immigration judges;

(ii) The need to establish a precedent construing the meaning of laws, regulations, or procedures;

(iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents;

(iv) The need to resolve a case or controversy of major national import;

(v) The need to review a clearly erroneous factual determination by an immigration judge; or

(vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).[6]

8 C.F.R. § 1003.1(e)(6) (emphasis added).[7]

The "streamlining" program has uniformly withstood challenges based on the Due Process Clause, *see Yu Sheng Zhang v. DOJ*, 362 F.3d 155, 156–59 (2d Cir.2004) (collecting cases from sister circuits upholding program and concluding that the regulations provide due process because "even after streamlining, an applicant for asylum or withholding of removal remains entitled to a full hearing on his asylum claims, a reasoned opinion from the IJ, the opportunity for BIA review, and the right to seek relief from the courts"); *see also, e.g., Hang Kannha Yuk v. Ashcroft*, 355 F.3d 1222, 1229–32 (10th Cir.2004); *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849–52 (9th Cir.2003). Our sister circuits have split, however, on the question of whether Courts of Appeals are vested with jurisdiction to review the Board's decision to have a particular case decided by a single member rather than by a three-member BIA panel.[8] *Compare Ngure v. Ashcroft*, 367 F.3d 975, 983 (8th Cir.2004) (decision to streamline "a particular case is committed to agency discretion and not subject to judicial review"), *and Tsegay v. Ashcroft*,

**6.** Subsection (5) covers cases that a single BIA member deems inappropriate for affirmance without opinion and does not refer to a three-member BIA panel pursuant to subsection (6). It allows the affirmance, modification, or reversal of an IJ's decision by a single BIA member issuing a "brief order." 8 C.F.R. § 1003.1(e)(5).

**7.** The beginning of subsection (e) makes clear that unless a case meets an enumerated standard in subsection (e)(6), referral to a three-member panel is not allowed. *See* 8 C.F.R. § 1003.1(e) ("Unless a case meets the standards for assignment to a three-member panel under paragraph (e)(6) of this section, all cases shall be assigned to a single Board member for disposition.").

**8.** It is not disputed that Courts of Appeals have jurisdiction to review the underlying merits of the final agency decision (within the limitations of the INA as amended by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), *see, e.g.,* 8 U.S.C. § 1252(a)(2)(B) (depriving courts of jurisdiction to review certain discretionary determinations of the Attorney General)) regardless of whether the BIA member initially reviewing an IJ's decision (1) affirms without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), (2) enters a brief order pursuant to section 1003.1(e)(5), or (3) refers the case to a three-member BIA panel pursuant to section 1003.1(e)(6). In this case, the Board member reviewing the IJ's decision to deny Kambolli's asylum and withholding of removal claims affirmed without opinion pursuant to section 1003.1(e)(4).

386 F.3d 1347, 1353–58 (10th Cir.2004) (concluding that appellate review is precluded because BIA summary affirmances provide no rationale, the regulations were not intended to grant aliens substantive rights, and review would be impractical and would defeat the "streamlining" purpose),[9] *with Smriko v. Ashcroft*, 387 F.3d 279, 290–95 (3d Cir.2004) (remanding case to BIA for three-member panel review), *and Haoud v. Ashcroft*, 350 F.3d 201, 206–08 (1st Cir.2003) (holding that, in a case in which a one-member decision without opinion left unclear whether affirmance was based on an application's untimeliness—a discretionary ground for denial that cannot be reviewed—or on the merits—which may be reviewed—Court of Appeals cannot know if it possesses jurisdiction and therefore must remand to BIA for explanation of *ratio decidendi* ), *and Chong Shin Chen v. Ashcroft*, 378 F.3d 1081, 1086–88 (9th Cir.2004) (remanding a one-member decision without opinion to the BIA for determination of a "novel legal issue" by a three-member panel of the BIA).

### B. *Our Review of a BIA Member's Affirmance Without Referral to a Three-Member Panel*

■ The threshold question we must address is what recourse a petitioner has, if any, upon a Board member's decision to resolve an appeal himself and not to refer the case to a three-member panel.

■ We observe preliminarily "that an alien's right to an administrative appeal from an adverse asylum decision derives from statute rather than from the Constitution." *Yu Sheng Zhang*, 362 F.3d at 157 (noting that "[e]ven a criminal defendant has no constitutional right to appeal" (citing *Furman v. United States*, 720 F.2d 263, 264 (2d Cir.1983))). Kambolli is therefore afforded an opportunity to appeal the IJ's decision only because Congress and the Attorney General have chosen to provide an appeals process by statute and regulation.

The Supreme Court has held repeatedly that, in general, decisions by administrative agencies are subject to judicial review, *see Lincoln v. Vigil*, 508 U.S. 182, 190, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993) (discussing " 'basic presumption of review' " under the Administrative Procedure Act ("APA") (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967))), and decisions made pursuant to the INA are often subject to this general rule. *See INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that despite specific jurisdiction-denying provisions of the IIRIRA, in immigration cases there still exists a "strong presumption in favor of judicial review of administrative action"); *see also*

---

9. The Court in *Tsegay* recognized that a prior Tenth Circuit panel had found jurisdiction to review a decision by a Board member not to refer an appeal to a three-member panel in *Batalova v. Ashcroft*, 355 F.3d 1246 (10th Cir.2004). The Court distinguished that case, however, on the ground that *Batalova* concerned 8 C.F.R. § 1003.1(e)(5), which does not prohibit the single BIA member reviewing an IJ decision from offering an explanation of his choice not to refer a case to a three-member panel. *Tsegay*, 386 F.3d at 1358 & n. 5. (We note that while the text of *Tsegay* describes *Batalova* as concerning *subsection* *(e)(6)* (as opposed to subsection (e)(5)), *see id.*, it is clear from the text of *Batalova*, the underlying regulation, and the context of *Tsegay* that the distinction between the two cases is that *Tsegay* concerned an affirmance without opinion pursuant to subsection (e)(4) and *Batalova* concerned a brief order entered pursuant to subsection (e)(5).) The single-member affirmance provision in section 1003.1(e)(4)— the provision at issue in this case and in *Tsegay*—specifically prohibits Board members from explaining their decisions to affirm without opinion and provides the precise language to be entered in such cases.

*INS v. Doherty*, 502 U.S. 314, 330, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) (Scalia, J., concurring in the judgment in part and dissenting in part) (citing *Shaughnessy v. Pedreiro*, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955) and stating that although the INA abrogates the APA's "detailed hearing procedures" for immigration cases, the APA's "judicial review provisions" nonetheless apply to hearings under the INA).

■ The INA allows a court considering a final order of removal pursuant to 8 U.S.C. § 1252 to review "all questions of law and fact, including interpretation and application of constitutional provisions, arising from any action taken or proceeding brought to remove an alien." *Id.* § 1252(b)(9); *see also* 5 U.S.C. § 704 ("[Under the APA,] a preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."). It is therefore the default rule that absent a provision of law to the contrary, action by an IJ or the BIA may be reviewed when the BIA's final action comes before this Court.

An exception to the default rule covers decisions "committed to agency discretion." *Smriko*, 387 F.3d at 291 (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(a)(2)(B) (denials of discretionary relief). The issue before us is whether there exists a meaningful standard against which a Court of Appeals may assess the decision of a single BIA member unilaterally to affirm an IJ's decision without opinion rather than refer it to a three-member BIA panel. *Cf. Lincoln*, 508 U.S. at 191, 113 S.Ct. 2024 (under 5 U.S.C. § 701(a)(2), a provision of the APA, "'review is not to be had' in those rare circumstances where the relevant [law] 'is drawn so a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" (quoting *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985))).[10] We conclude that 8 C.F.R. § 1003.1(e)(6) does not provide such a standard.

Another argument against our review—which we conclude is persuasive—is that a Board member acting pursuant to 8 C.F.R. § 1003.1(e)(4) is prohibited from making any record whatsoever of his reasoning when deciding to act alone and affirm an IJ's decision without opinion.[11] Pursuant to the streamlining regulation,

[i]f the Board member determines that the decision should be affirmed without opinion, the Board shall issue an order that reads as follows: "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. *See* 8 CFR [§ 1003.1](e)(4)." An order affirming without opinion, issued under authority of this provision, *shall not include further explanation or reasoning.*

10. A clear example of such circumstances is an agency's decision whether to institute enforcement proceedings. *See Heckler*, 470 U.S. at 831, 105 S.Ct. 1649.

11. Although this case concerns only a unilateral affirmance without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), we believe that our discussion applies with equal force to subsection (e)(5). We leave for another day the question of whether we have authorization to review a petitioner's claim that a single BIA member erred in unilaterally affirming an IJ without opinion (under subsection (e)(4)) rather than unilaterally affirming the IJ with a short statement of reasons (under subsection (e)(5)) instead. To decide this case, it is enough that the language of subsection (e)(6) allowing reference to three-member BIA panels in certain circumstances does not provide a meaningful standard for judicial review.

8 C.F.R. § 1003.1(e)(4)(ii) (emphasis supplied). A reviewing court therefore has no knowledge—and can have no knowledge—of the decision-making process of the BIA member. In addition, the prohibition on explanation clearly indicates that the authors of the regulations did not envisage review of the reasoning behind a BIA member's choice of unilateral affirmance without opinion over reference to a three-member BIA panel.[12]

Petitioner argues that 8 C.F.R. § 1003.1(e) *itself* provides a sufficient benchmark for a reviewing court to evaluate a decision to affirm unilaterally without opinion. Under subsection (e)(6), certain categories of cases may be directed to three-member panels, and subsection (e)(4) describes those cases in which a BIA member shall affirm without opinion. According to petitioner, a reviewing court can therefore review the record against the factors in subsection (e)(6) to see if a unilateral decision without reference to a three-member BIA panel was truly warranted. If the reviewing court finds that a Board member erred in not determining that, for example, there existed a "need to settle inconsistencies among the rulings of different immigration judges," 8 C.F.R. § 1003.1(e)(6)(i), remand would be appropriate for consideration by a three-member BIA panel.[13]

---

**12.** The Third Circuit has suggested that even though an order affirming an IJ's decision without opinion, according to regulation, "shall not include further explanation or reasoning," the single BIA member may nonetheless explain why he chose to affirm without opinion and without referral to a three-member BIA panel (as opposed to explaining how he reached his view of the underlying merits). *See Smriko*, 387 F.3d at 293–94 ("[W]e understand it to preclude any explanation of the member's reason for affirming the IJ's decision .... We do not read it as precluding comment regarding the decision to streamline.").

We do not think the language of the regulation supports the Third Circuit's interpretation. In nearly all cases of unilateral decisions without opinion, the BIA member's review of the merits of the underlying IJ decision will merge with his choice to dispose of the case without reference to a three-member panel. Therefore, any "comment regarding the decision to streamline" would of necessity involve impermissible "explanation of the member's reason for affirming the IJ's decision." *See id.* In addition, we fail to see why, if a BIA member need not explain his views on the merits of an IJ's decision—which is, after all, the real issue at hand—a reviewing court would nevertheless require that the Board member explain his decision to "streamline," absent a desire to circumvent the regulatory prohibition on discussing the merits in an affirmance without opinion.

**13.** Because the categories in subsection (e)(4) and subsection (e)(5) turn on the merits of the claims presented to an IJ, analysis of whether a BIA member "abused his or her discretion" in unilaterally affirming without referral to a three-member BIA panel will hew closely to a reviewing court's examination of the underlying asylum and withholding claims. Any reviewing court holding, for example, that the IJ was wrong to deny asylum will of course reach the conclusion that the BIA member erred in affirming unilaterally the erroneous decision of an IJ pursuant to subsection (e)(4) or (e)(5).

Nonetheless, we recognize that not all improper unilateral decisions without opinion will occur when the IJ errs on the merits. For example, in a case presenting a novel question of immigration law worthy of review by a three-member BIA panel, unilateral disposition is, in principle, not warranted. Three-member panel review is permitted under the regulation even though in at least some of these cases, the petitioner will lose. If an IJ denies a petitioner's claims in such a case, the correct action by the BIA member is either to refer the case to a three-member panel under subsection (e)(6) or to decide it by "brief order" under subsection (e)(5)—because a unilateral affirmance without opinion under subsection (e)(4) would not be appropriate. *See* 8 C.F.R. § 1003.1(e)(6)(ii) (allowing referral to three-member panel in cases of "need to establish a precedent construing the meaning of laws"); *id.* § 1003.1(e)(5) (provid-

We reject this argument—and therefore conclude that we lack jurisdiction to review decisions by BIA members to affirm IJ decisions without opinion without reference to a three-member BIA panel—substantially for the reasons articulated by our sister circuits reaching the same result.[14] *See Ngure*, 367 F.3d at 983; *Tsegay*, 386 F.3d at 1353–58. Any review by a Court of Appeals of BIA members' decisions to decide cases without referral to three-member panels would undermine the BIA's streamlining scheme, inasmuch as Board members, who are prohibited by regulation from explaining a decision to act

alone under 8 C.F.R. § 1003.1(e)(4) and produce only a "brief order" when acting alone under 8 C.F.R. § 1003.1(e)(5), would be encouraged to refer cases to three-member panels in an effort to prevent unnecessary remanding of cases.[15] In addition, 8 C.F.R. § 1003.1(e)(6) states that a BIA member "may" refer a case to a three-member panel in certain circumstances—not that he "must" do so—and provides no guidance concerning when such reference is appropriate, making it even more difficult for a Court of Appeals to review a single member's decision to

ing for "brief order" by a single member "affirming, modifying, or remanding the decision under review" in certain cases). A unilateral affirmance without opinion in such a case would—assuming *arguendo* that this Court had jurisdiction to review the decision to act unilaterally—necessitate a remand for ultimate *affirmance* by a three-member panel or by a single member issuing a brief order. In other words, even though the underlying IJ decision was correct, we would be required to remand the case to the BIA solely because of a defect in the application of the internal procedures of the BIA. (The BIA panel's order affirming the IJ's decision, moreover, could then be appealed on the merits.)

In addition, in some cases, the lack of review by a three-member panel arguably could prejudice petitioners. For example, in a case presenting a new question of statutory interpretation, this Court might construe the INA in a reasonable way detrimental to a particular petitioner's case, even though—had the case been referred to a three-member BIA panel—the BIA might have made a contrary (but also reasonable) interpretation of the INA that redounded to the petitioner's benefit. (This might result from the BIA, because of its institutional expertise, being more willing than this Court to adopt novel interpretations of its governing statute.) Because a three-member BIA panel might interpret the statute in a way more favorable to the applicant than would this Court, the unilateral affirmance would hurt the petitioner by denying him access to a determination by the BIA that would receive deference by this Court under the principles of *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S.

837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), meaning that the referral *vel non* to a three-member panel could, in theory at least, be dispositive in a small number of cases. We conclude, however, that this theoretical risk of occasional prejudice is far outweighed by the agency's interest in maintaining its "streamlining" procedures.

14. Our decision in this case does not preclude us from remanding cases to the BIA for a written panel decision in those rare instances in which a formal agency statement construing either the INA or prior BIA decisions is needed. *See Shi Liang Lin v. DOJ*, 416 F.3d 184, 191–92 (2d Cir.2005) (remanding case to BIA for explanation of rationale underlying prior BIA precedential decision); *see also Ucelo–Gomez v. Gonzales*, 448 F.3d 180 (2d Cir.2006) (remanding so that BIA may determine in the first instance whether "affluent Guatemalans" constitute a "social group" for purposes of asylum determinations).

15. In light of the BIA's extraordinarily heavy caseload, we expect that Board members would be especially eager to avoid reviewing the same IJ decision twice. Considering the size of our own immigration docket, we note the inefficient use of judicial resources that would occur should an IJ decision affirmed without opinion by a BIA member be (1) appealed to this Court, (2) remanded for review by a three-member BIA panel, (3) affirmed by that panel, and (4) appealed to this Court again for review of the merits of the IJ's order.

dispose of an appeal unilaterally. Because it is "absolutely clear" that "[a]bsent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties," *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) (internal quotation marks omitted), we decline the invitation to cripple the streamlining process by assuming authority to review these routine BIA procedural decisions.

We note as well that were we to have such jurisdiction, we would sorely lack the expertise necessary to evaluate whether a particular case warranted a hearing before a three-member BIA panel. For example, one ground for referring a case to a three-member panel is the "need to settle inconsistencies among the rulings of different immigration judges." 8 C.F.R. § 1003.1(e)(6)(i). BIA members, who review thousands of IJ decisions, know better than any reviewing court of appeals whether a given issue has generated inconsistencies among IJs that require rectification. For instance, were a petitioner to seek review of a unilateral affirmance on the ground that three-member review was necessary to settle conflicting IJ rulings because a similarly-situated applicant re-ceived asylum whereas the petitioner did not, we could not decide the case without canvassing the landscape of IJ decisions to determine whether the case before us truly represented an aberration.[16] Similarly, a petition for review based on the regulatory provision authorizing three-member review of "a case or controversy of major national import," 8 C.F.R. § 1003.1(e)(6)(iv), would require that we compare the "national import" of a petitioner's asylum case to those of other applicants. The difficulty of these endeavors would be compounded by the fact that most IJ decisions are unpublished.

Our lack of jurisdiction to review decisions by single BIA members to affirm without referral to three-member BIA panels does not, we emphasize, prevent us from reviewing the *merits* of IJ decisions that are not "correct," 8 C.F.R. § 1003.1(e)(4), are based on "a clearly erroneous factual determination by an immigration judge," 8 C.F.R. § 1003.1(e)(6)(v), are not in "conformity with the law," 8 C.F.R. § 1003.1(e)(6)(iii), or which for any other reason may have merited three-member panel review by the BIA—subject, of course, to the jurisdiction-denying provisions of the INA as amended by the IIRIRA.[17] Although our jurisdiction, where it exists, is designed to protect the substantive rights of applicants, the streamlining procedures were certainly not intended to create additional rights.[18] It is

---

**16.** There is no reason necessarily to believe that the putative discordant case would have arisen in this Circuit; the regulation makes no reference to inconsistencies within the jurisdiction of a particular Court of Appeals. Petitioners would presumably therefore be free to base claims of erroneous decisions to affirm unilaterally on differing IJ determinations in Circuits operating under different judicial interpretations of various statutory and regulatory provisions.

**17.** *See generally Saloum v. U.S. Citizenship & Immigration Servs.*, 437 F.3d 238, 242–44 (2d Cir.2006) (discussing interaction between jurisdiction-denying provisions of the INA and jurisdiction-restoring provisions of the REAL ID Act of 2005); *Xiao Ji Chen v. DOJ*, 434 F.3d 144, 150–55 (2d Cir.2006) (same).

**18.** As discussed *ante,* the Department of Justice promulgated the "streamlining" regulations in response to a crushing backlog of immigration appeals. It is clear from this

not the role of the federal courts to dictate the internal operating rules of the BIA. We therefore hold that we lack jurisdiction to review a claim that a single BIA member erred in deciding to resolve unilaterally an appeal of an IJ's order and not to refer the case to a three-member BIA panel.

## Conclusion

In sum, we hold that (1) the IJ's decision to deny Kambolli's request for asylum and withholding of removal under the INA was supported by substantial evidence, (2) Kambolli waived his claim under the CAT by not appealing the IJ's denial of his CAT claim to the BIA, and (3) we lack jurisdiction to review Kambolli's claim that his case should have been referred to a three-member BIA panel, rather than being affirmed without opinion by a single BIA member. Accordingly, we deny the petition for review insofar as we are vested with jurisdiction to consider certain claims presented by Kambolli, and we dismiss the petition for want of jurisdiction insofar as Kambolli seeks review of a single BIA member's decision to affirm unilaterally without referral of the case to a three-member panel of the BIA.

background that the regulations were not designed to create an additional level of review. We note, moreover, that the concerns inspiring the "streamlining" program have by no means been resolved. The BIA backlog in October 2004 totaled around 33,000 cases, *see* Executive Office for Immigration Review ("EOIR"), *Fact Sheet: BIA Restructuring and Streamlining Procedures* (rev. ed. Dec. 8, 2004), *available at* http://www.usdoj.gov/eoir/press/04/BIAStreamlining120804.pdf. Additionally, the BIA affirms thousands of IJ decisions annually without

opinion. *Id.; see also* Letter from Kevin D. Rooney, Director, EOIR, to John S. Carroll, Editor, *Los Angeles Times*, May 3, 2005, *available at* http://www.usdoj.gov/eoir/press/05/LettertoEditorLAT.pdf (noting that BIA and IJs "together handle over 340,000 matters annually").

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto Gonzales is substituted for his predecessor, Attorney General John Ashcroft, as a respondent in this case.