449 F.3d 465
 Deo Burton GUYADIN, Basdeo Guyadin, Chandra Pattie Singh, Petitioners,
v.
Alberto GONZALES, as Attorney General of the United States,* William Cleary, Acting Field Director Deportation and Removal, Buffalo District, Bureau of Immigration and Customs Enforcement, United States Department of Homeland Security, Respondents.
 Docket No. 05-3252-AG(L).
 Docket No. 05-3273(CON).
 Docket No. 05-3312(CON).
 United States Court of Appeals, Second Circuit.
 Argued: May 11, 2006.
 Decided: May 30, 2006.
 
 Mark T. Kenmore, Buffalo, NY, for Petitioners.
 Stephan Baczynski, Assistant United States Attorney (Kathleen M. Mehltretter, Acting United States Attorney, James P. Kennedy, Assistant United States Attorney, on the brief), United States Attorney's Office for the Western District of New York, Buffalo, NY, for Respondents.
 Before: WINTER, CABRANES and RAGGI, Circuit Judges.
 JOSÉ A. CABRANES, Circuit Judge.
 
 
 1
 We consider here petitions for review filed by three members of a single family. Their cases were consolidated in a single hearing before an immigration judge, and we have consolidated their three separate petitions for review.
 
 
 2
 Petitioners Basdeo Guyadin and Chandra Pattie Singh, natives and citizens of Guyana, and Deo Burton Guyadin, a native of St Lucia and a citizen of Guyana, seek review of an April 14, 2004 order of the Board of Immigration Appeals ("BIA" or "Board") denying their motion to reopen or to reconsider the Board's prior decision of December 11, 2003 affirming a June 18, 2002 order of Immigration Judge Philip J. Montante ("the IJ") that (1) denied their application for "adjustment of status" under Section 245 of the Immigration and Naturalization Act of 1952 ("INA"), as amended, 8 U.S.C. § 1255,[1] (2) denied their application for voluntary departure, and (3) ordered all three petitioners removed from the United States. See In re Guyadin, File No. Abh-ygq-iqj (Buffalo, NY, June 18, 2002).
 
 INTRODUCTION
 
 3
 Basdeo Guyadin ("Guyadin") entered the United States on March 30, 1995 as a non-immigrant visitor, overstayed his visa, and has remained here ever since. Chandra Pattie Singh ("Singh"), who is Guyadin's wife, entered the United States along with their son, Deo Burton Guyadin ("Burton"), on May 11, 1995. Singh and Burton have also overstayed their visas. While returning from a visit to Niagara Falls in July 1999, the family car was pulled over after police stopped another member of their travel party for allegedly speeding in a separate car. Thus alerted to the Guyadins' unlawful presence in the United States, the Government began removal proceedings.
 
 
 4
 At a hearing before the IJ, Guyadin testified that he came to the United States to visit and subsequently decided to stay. Singh testified similarly, stating that she and Burton came to join her husband on vacation and that the family only later decided to remain in the United States so that Burton could get the best possible education. Guyadin and Singh, who were the only witnesses at the hearing, testified that Guyadin, who is a car mechanic, began working in the United States when friends hired him to fix their car around a month after his arrival. Guyadin testified that since then has worked "here and there in different shops," one of which eventually sponsored him for permanent residence. This sponsorship — and Guyadin's subsequent receipt of authorization from the Department of Labor to work in the United States, which was the basis for petitioners' application for adjustment of status — was secured after the Government began removal proceedings but before the IJ decided the case.
 
 
 5
 The IJ found that Guyadin was eligible for the relief he sought but declined to grant the adjustment of status because "a favorable exercise of discretion is not warranted due to the totality of the circumstances." The IJ's primary reason for not granting the application was that Guyadin had worked in the United States for several years without paying any federal income tax despite earning a total of approximately $100,000. Among other adverse factors, the IJ noted as well that Guyadin did not gain authorization to work legally or make an earnest effort to pay his taxes, which remained unpaid at the time of Guyadin's final hearing before the IJ, until after being arrested. In addition, the IJ mentioned that Burton attends public schools, which are funded by those residents who do pay their taxes. Concluding that the adverse factors outweighed any positive factors in Guyadin's favor and that petitioners had not demonstrated that denial of their applications would result in severe hardship, the IJ denied the applications.
 
 
 6
 Petitioners appealed the IJ's decision to the BIA, which affirmed the IJ's decision and stated that Guyadin's "favorable factor" — that he has been approved to work in the United States by the Department of Labor — is outweighed by the "negative factors" of his having worked for years illegally without paying taxes. The decision distinguished prior BIA cases approving applications filed by aliens who had worked illegally by noting that those cases did not involve prolonged tax evasion. See In re Guyadin, File No. Ash-peb-esm (BIA Dec. 11, 2003).
 
 
 7
 Petitioner then filed with the BIA a "motion to reopen and assign to a three-member panel," a motion that was filed more than thirty but fewer than ninety days after the Board issued its initial affirmance. The BIA concluded that, based on its content, the motion was more properly described as a "motion to reconsider" the Board's prior decision. The Board noted, however, that such motions must be filed within thirty days of the issuance of the decision an alien wants reconsidered, making petitioners' motion untimely if treated as a motion to reconsider. See 8 C.F.R. § 1003.2(b)(2). The BIA therefore evaluated the motion as a motion to reopen, which may be filed up to ninety days after the issuance of the BIA decision an alien seeks to reopen, see 8 C.F.R. § 1003.2(c)(2). Concluding that petitioners' motion did not meet the standards governing motions to reopen, see 8 C.F.R. § 1003.2(c)(1), the BIA denied the motion. See In re Guyadin, File No. Arv-enu-shh (BIA Apr. 14, 2004).
 
 ANALYSIS
 
 8
 Petitioners raise two issues on appeal. First, they argue that the IJ wrongly concluded (and the BIA wrongly agreed) that Guyadin's nonpayment of taxes outweighed the positive factors supporting a grant of adjustment of status. Second, they argue that the BIA erred in deciding the appeal without referring the case to a three-member BIA panel. As we explain below, we find neither argument persuasive.
 
 
 9
 I. We Lack Jurisdiction to Review an IJ's Discretionary Decision Not To Grant Adjustment of Status
 
 
 10
 The INA allows a court considering a final order of removal pursuant to 8 U.S.C. § 1252 to review "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien." Id. § 1252(b)(9). Pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), Congress has, however, amended the INA to preclude judicial review of any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of" asylum. 8 U.S.C. § 1252(a)(2)(B)(ii). The phrase "this subchapter" refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151-1381. See, e.g., Onyinkwa v. Ashcroft, 376 F.3d 797, 799 (8th Cir.2004). The scope of this jurisdiction-removing provision of the IIRIRA was itself limited by section 106(a)(1)(A)(iii) of the REAL ID Act of 2005 ("REAL ID Act"), Pub.L. No. 109-13, 119 Stat. 231, which provides that nothing in any provision of the INA "which limits or eliminates judicial review . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals . . . ." 8 U.S.C. § 1252(a)(2)(D).
 
 
 11
 The IJ's decision in this case, which was made pursuant to discretionary authority granted by 8 U.S.C. § 1255, is clearly within the category of decisions insulated from judicial review by the REAL ID Act. See 8 U.S.C. § 1252(a)(2)(B)(i) (precluding judicial review of "any judgment regarding the granting of relief under" § 1255). Petitioners' attempt to evade this jurisdiction-denying provision by disguising their claims of error as "questions of law" cannot succeed. An assertion that an IJ or the BIA misread, misunderstood, or misapplied the law in weighing factors relevant to the grant or denial of discretionary relief does not convert what is essentially an argument that the IJ and BIA abused their discretion into a legal question. Such legal alchemy would defeat the intent and the language of the INA. See Saloum v. U.S. Citizenship & Immig. Servs., 437 F.3d 238, 243-44 (2d Cir.2006) (rejecting petitioner's effort to "dress up" into a reviewable claim an argument that "the IJ incorrectly weighed the evidence" and that the agency therefore abused its discretion, a claim "over which we have no jurisdiction" (internal quotation marks omitted)); see also Bugayong v. INS, 442 F.3d 67, 73 (2d Cir.2006) (rejecting claim that purported legal errors made by IJ denying adjustment of status sought on the basis of "extreme hardship" provided this Court with jurisdiction to review the IJ's exercise of discretion); Elysee v. Gonzales, 437 F.3d 221, 224 (1st Cir.2006) (holding that Court of Appeals lacked jurisdiction to review "the balancing of factors engaged in by the IJ" in making discretionary determination).
 
 
 12
 Because we lack jurisdiction to review any claim that an IJ or the BIA erred in weighing the factors relevant to the grant or denial of adjustment of status, petitioners' claim is dismissed for lack of jurisdiction insofar as it challenges the decision to deny Guyadin's application for adjustment of status.
 
 
 13
 II. We Lack Jurisdiction to Review a BIA Member's Decision to "Streamline," Affirming Unilaterally Rather Than Referring an Appeal to a Three-Member BIA Panel
 
 
 14
 Petitioners argue that the BIA member assigned responsibility for their appeal of the IJ's decision erred in affirming the IJ's decision unilaterally pursuant to the BIA's "streamlining" regulations rather than referring the case for review by a three-member BIA panel. See 8 C.F.R. § 1003.1(e) (requiring single BIA member to decide certain appeals unilaterally); id. § 1003.1(e)(6) (describing categories of appeals that "may . . . be assigned for review by a three-member panel").
 
 
 15
 We recently held that we lack jurisdiction to review a petitioner's claim that the BIA member responsible for an appeal erred in unilaterally affirming the IJ's underlying decision instead of referring the appeal to a three-member BIA panel pursuant to 8 C.F.R. § 1003.1(e)(6).[2] See Kambolli v. Gonzales, No. 03-40411, 449 F.3d 454, at 458-65, 2006 WL 1453116, at *3-*7 (2d Cir. May 26, 2006) (dismissing for lack of jurisdiction claim a petitioner's claim that a BIA member erred in unilaterally affirming an IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4)). Here, the BIA member reviewing petitioners' appeal of the IJ's decision in their case affirmed the IJ's order by a "brief order" as contemplated by 8 C.F.R. § 1003.1(e)(5) (providing for "brief order" by a single BIA member "affirming, modifying, or remanding the decision under review" in certain cases). See In re Guyadin, File No. Asn-jse-cbv (BIA Dec. 11, 2003). For the same reasons relied upon in Kambolli to reject a challenge to a BIA member's unilateral affirmance pursuant to subsection (e)(4), we hold that we lack jurisdiction to review a BIA member's decision to act unilaterally pursuant to subsection (e)(5) instead of referring an appeal to a three-member BIA panel pursuant to subsection (e)(6).
 
 
 16
 The BIA's "streamlining" regulations were enacted in response to a crushing backlog of immigration appeals, the continuing existence of which prevents the speedy resolution of proceedings vitally important to thousands of aliens,[3] and we will not cripple the BIA's procedures by subjecting to appellate review internal case-management decisions far removed from the actual substantive rights of aliens. The BIA's members and the dedicated corps of immigration judges under the Board's supervision should be applauded for their continuing diligence, their integrity, and and — as is shown in the records of nearly all immigration cases we encounter in this Court — their earnest desire to reach fair and equitable results under an almost overwhelmingly complex legal regime. Statutes, regulations, and case law regularly change, and the cases before IJs require subtle legal analysis as well as robust factfinding generally dependent on credibility assessments that a reviewing court cannot duplicate. See Zhou Yun Zhang v. INS, 386 F.3d 66, 73-74 (2d Cir.2004). IJs and the BIA are to be commended for their efforts, in which the "streamlining" policy plays an important role.
 
 
 17
 We therefore dismiss the petition for review for lack of jurisdiction insofar as it challenges the streamlining decision.
 
 Conclusion
 
 18
 In sum, we hold that (1) we lack jurisdiction to review the IJ's assignment of weight to factors relevant to the grant or denial of an application for adjustment of status and (2) we lack jurisdiction to review a decision by the BIA to "streamline" an appeal by deciding it unilaterally by "brief order" rather than referring it to a three-member BIA panel.
 
 
 19
 Accordingly, the petition for review is dismissed for lack of jurisdiction.
 
 
 
 Notes:
 
 
 *
 Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto Gonzales is substituted for his predecessor, Attorney General John Ashcroft, as a respondent in this case
 
 
 [1]
 The INA grants the Attorney General discretion to adjust the status of certain aliens. The provision relevant to this case states that
 [u]pon receipt of . . . an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence. . . .
 8 U.S.C. § 1255(i)(2) (emphasis added).
 
 
 [2]
 We had already held that the "streamlining" program itself does not deny aliens their due process rightsSee Yu Sheng Zhang v. DOJ, 362 F.3d 155, 156-59 (2d Cir.2004) (collecting cases from sister circuits upholding program and concluding that the regulations provide due process because "even after streamlining, an applicant for asylum or withholding of removal remains entitled to a full hearing on his asylum claims, a reasoned opinion from the IJ, the opportunity for BIA review, and the right to seek relief from the courts"); see also, e.g., Hang Kannha Yuk v. Ashcroft, 355 F.3d 1222, 1229-32 (10th Cir. 2004); Carriche v. Ashcroft, 350 F.3d 845, 849-52 (9th Cir.2003).
 
 
 [3]
 As we noted inKambolli, it "is clear from this background that the regulations were not designed to create an additional level of review," which would serve only to undermine the BIA's effort to reduce its backlog and more efficiently adjudicate immigration appeals. Kambolli, 449 F.3d at 464, 2006 WL 1453116, at *7 n. 18.