PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FERNANDO QUINTEROS-MENDOZA,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 07-1544

On Petition for Review of an Order
of the Board of Immigration Appeals.

Argued: December 5, 2008

Decided: February 11, 2009

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Petition for review denied by published opinion. Judge Motz
wrote the opinion, in which Judge Michael and Judge King
joined.

## COUNSEL

**ARGUED:** Jason Alexander Dzubow, MENSAH, SHOE-
MAKER & DZUBOW, P.L.L.C., Washington, D.C., for Peti-
tioner. Eric Warren Marsteller, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent. **ON BRIEF**: Peter D. Keisler, Assistant Attorney

General, M. Jocelyn Lopez Wright, Assistant Director, Margaret Perry, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

An Immigration Judge (IJ) denied Fernando Quinteros-Mendoza asylum and withholding of removal. In a brief written opinion, a single member of the Board of Immigration Appeals (BIA) affirmed. Quinteros-Mendoza petitions for review, asserting that the BIA erred in refusing to refer his case to a three-member panel and that the single member who did review his case erred in denying him relief. Although we disagree with the Government's contention that we lack jurisdiction to review the BIA's refusal to refer a case to a three-member panel, the BIA's subsequent precedential decision has eliminated the need for such three-judge review in the case at hand. Moreover, because the BIA's decision in this case accords with its subsequent precedential decision, we deny the petition for review.

I.

In April 2004, a gang known as The Maras began targeting Quinteros-Mendoza in El Salvador. The first incident occurred when three gang members attacked and beat him after he took his girlfriend home. This harassment continued on a regular basis, between three to five times per week. In each instance, the gang members sought to extort money from Quinteros-Mendoza.

After a number of attacks at various locations, the gang members confronted Quinteros-Mendoza three times at a Sev-

enth Day Adventist Church in El Salvador, which Quinteros-Mendoza had attended regularly since 1987. The gang demanded money but also threatened to hurt Quinteros-Mendoza if he continued to attend church. Sometime after the third attack at his church, Quinteros-Mendoza capitulated and ceased attending services. The violence and threats did not stop. Although Quinteros-Mendoza called the police on many occasions throughout this ordeal, their response was uniformly ineffectual.

In the face of this harassment, Quinteros-Mendoza fled to the United States and in September 2004 entered without authorization. When the government placed him in removal proceedings, he filed for asylum, alleging that the gang members had persecuted him based on his religion and political opinion and that they would kill him if he returned to El Salvador. Family members confirmed continuing threats against his life.

The IJ found Quinteros-Mendoza's testimony credible and sufficiently corroborated. She further found that the level of harm he feared constituted persecution and that his fear of persecution upon return to El Salvador was well founded. Applying the recently enacted REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 302, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(i) (2006)), the IJ nonetheless denied asylum and withholding of removal because she found that neither religion nor political opinion was a "central reason" for the persecution.

In a brief opinion pursuant to BIA "streamlining" regulations, *see* 8 C.F.R. § 1003.1(e)(5)–(6) (2008), a single member of the BIA affirmed, concurring that Quinteros-Mendoza's religion was not "at least one central reason" for the persecution. In this appeal, Quinteros-Mendoza argues that the BIA erred (1) in failing to refer his case to a three-member panel, and (2) in its interpretation and application of the REAL ID Act's "one central reason" standard.

II.

At the time the BIA reviewed Quinteros-Mendoza's claim, a three-member panel had not interpreted the "one central reason" provision of the REAL ID Act of 2005. Quinteros-Mendoza argues that the BIA violated its own regulations by refusing to refer his case to such a panel in order "to establish a precedent" construing that part of the REAL ID Act. 8 C.F.R. § 1003.1(e)(6)(ii) (2008). The Government sharply disagrees, contending that Congress has foreclosed judicial review of BIA "streamlining" decisions. Alternatively, the Government argues that the BIA's subsequent interpretation of this provision moots the need for three-member review in this case.

A.

We first address whether Congress has foreclosed our review of BIA streamlining decisions. Although the BIA has broad discretion to enact appropriate administrative regulations, like the streamlining provisions at issue here, *see Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 278–83 (4th Cir. 2004), that broad discretion does not shield the BIA's implementation and execution of those regulations from judicial review.[1] Indeed, we recently exercised precisely this juris-

---

[1] Thus, we emphasize that we do not question the agency's power to formulate these streamlining regulations, a question we addressed in *Blanco de Belbruno*, and an area in which the Supreme Court has severely circumscribed our review. *See Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 523–25 (1978). Instead, the question before us is whether we can review the agency's *adherence* to its own validly enacted procedures. *See, e.g., Morton v. Ruiz*, 415 U.S. 199, 235–36 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954); *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999); 32 Charles H. Koch, Jr., *Federal Practice and Procedure* § 8165, at 182–83 (2006) (distinguishing between agency *formulation* of procedural rules, which generally is committed to agency discretion, and agency *compliance* with those rules, about which courts are "very careful").

diction. *See Li Fang Lin v. Mukasey*, 517 F.3d 685, 693–94 (4th Cir. 2008). There we noted that the "BIA [had] yet to provide a published, precedential opinion" (i.e., one issued by a three-member panel) addressing a particular legal question. *Id.* at 693. To avoid "violating fundamental separation-of-powers principles," in *Li Fang Lin*, we remanded the case to the BIA with instructions to have a three-person panel resolve that question. *Id.* at 694. Of course, if we lacked jurisdiction to review the BIA's initial decision to assign the case to a one-member panel, we would be powerless to order such a remand.

In *Li Fang Lin* we did not, however, explain our rationale for finding jurisdiction. We think it is worthwhile to do so now, in light of the division in the circuits on this question. *Compare Purveegiin v. Gonzales*, 448 F.3d 684, 691–92 (3d Cir. 2006) (finding jurisdiction to review BIA streamlining decisions), *Chong Shin Chen v. Ashcroft*, 378 F.3d 1081, 1087–88 (9th Cir. 2004) (same), *and Batalova v. Ashcroft*, 355 F.3d 1246, 1252–53 (10th Cir. 2004) (same), *with Guyadin v. Gonzales*, 449 F.3d 465, 469–70 (2d Cir. 2006) (finding no jurisdiction over such decisions), *and Bropleh v. Gonzales*, 428 F.3d 772, 779 (8th Cir. 2005) (same).

Our disposition in *Li Fang Lin* reflects the strong presumption favoring judicial review of agency action. *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). Congress may overcome this strong presumption in two limited ways: through an express jurisdiction-stripping provision, *see* 5 U.S.C. § 701(a)(1) (2006), or by committing agency action "to agency discretion by law," *see id.* § 701(a)(2). No express jurisdiction-stripping provision applies here; the Government contends, however, that Congress has implicitly stripped us of jurisdiction by committing streamlining decisions to agency discretion.

The Supreme Court has drawn the "committed to agency discretion" exception extremely narrowly, applying it only "in

those rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (*quoting Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). Here, no *statute* evinces clear and convincing congressional intent to commit BIA streamlining decisions to that agency's discretion by law. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63–64 (1993) (requiring a statute to evince clear and convincing evidence that Congress meant to foreclose review). Instead, Congress merely has given the agency the power to enact appropriate administrative regulations, mandating that the Secretary of Homeland Security "shall establish such regulations; . . . issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of [the immigration laws]." 8 U.S.C. § 1103(a)(3) (2006).

Moreover, contrary to the Government's contention, the agency's own regulations do not provide the BIA with the claimed *unreviewable* discretion. The regulations do state that the BIA "*may* only" refer a case to a three-member panel if one of six factors is present. 8 C.F.R. § 1003.1(e)(6) (2008).[2] But the regulations also prescribe that "*[u]nless* a case meets the standards for assignment to a three-member panel under [§ 1003.1(e)(6)], all cases *shall* be assigned to a single Board member for disposition." *Id.* § 1003.1(e) (emphasis added). This certainly suggests that if a case does meet the standard for adjudication by a three-member panel, a single member *shall not* decide it. *See Purveegiin*, 448 F.3d at 689. The regulations further direct a Board member to decide a case referred to him "*unless* the Board member designates the case for decision by a three-member panel" because it squarely

---

[2]Of course, this use of "may" does not in and of itself establish unlimited, and so unreviewable, agency discretion. *See Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) ("[W]hile 'may' suggests discretion, it does not necessarily suggest unlimited discretion.").

implicates one of the six § 1003.1(e)(6) factors. 8 C.F.R. § 1003.1(e)(5) (emphasis added).[3]

Moreover, the six factors found in § 1003.1(e)(6) are not cast in such discretionary terms as to preclude meaningful review of them. *See Batalova*, 355 F.3d at 1253 (noting that the six factors "are the kinds of issues we routinely consider in reviewing cases, and they have nothing to do with the BIA's caseload or other internal circumstances"). For instance, under the abuse of discretion standard, we regularly review the presence or absence of "clearly erroneous factual determination[s]," 8 C.F.R. § 1003.1(e)(6)(v) (2008). *See, e.g.*, *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Likewise, it lies within our purview to review whether an immigration judge's decision was "in conformity with the law or with applicable precedents." 8 C.F.R. § 1003.1(e)(6)(iii) (2008). And, as we found in *Li Fang Lin*, 517 F.3d at 693–94, we can readily review whether there exists a "need to establish a precedent construing the meaning of laws, regulations, or procedures." 8 C.F.R. § 1003.1(e)(6)(ii) (2008).[4]

---

[3]The Government notes that the Department of Justice has proposed a new regulation that clarifies the agency's position that streamlining decisions are not subject to judicial review. *See* Board of Immigration Appeals: Affirmance Without Opinion, Referral for Panel Review, and Publication of Decisions as Precedents, 73 Fed. Reg. 34,654, 34,663 (proposed June 18, 2008) (to be codified at 8 C.F.R. § 1003.1(e)(9)) (mandating that the provisions in § 1003.1(e)(5)–(6) "do not . . . create any substantive or procedural rights enforceable before any immigration judge or the Board, or any court"). Although the comment period for this proposed rule has closed, *id.* at 34,654, it has not become a final rule. Thus, it has no bearing on our inquiry here. Moreover, that the agency saw the need to propose this regulation only reinforces our conclusion that the present statutory and regulatory scheme does not evince a clear and convincing intent to foreclose judicial review.

[4]The Second Circuit has found review of these types of streamlining decisions precluded because Courts of Appeals allegedly "lack the expertise necessary" to measure the BIA's streamlining decision against these six factors. *Kambolli v. Gonzales*, 449 F.3d 454, 464 (2d Cir. 2006). This

In most cases, we review the merits of the BIA's final order, with no need to address the process by which the BIA issued that order. *See Batalova*, 355 F.3d at 1253 n.8. The BIA intended the streamlining procedures to enhance administrative efficiency without prejudicing applicants with meritorious appeals. Nonetheless, as the agency itself recognizes, three-member panel review can provide important procedural benefits. Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878, 54,887–88 (Aug. 26, 2002); *see also Purveegiin*, 448 F.3d at 690–91; *Smriko v. Ashcroft*, 387 F.3d 279, 296–97 (3d Cir. 2004). Thus, in certain circumstances, our review of the BIA's final order must include a review of the procedures by which the BIA obtained that result.

Were we to find Congress's simple grant of regulatory authority, *see* 8 U.S.C. § 1103(a)(3) (2006), sufficient to provide the BIA boundless and unreviewable discretion, we would effectively shield any BIA administrative regulation from our review based solely on that agency's say so. This argument proves too much. We thus hold that we do have jurisdiction to decide whether the BIA's decision to streamline a case under 8 C.F.R. § 1003.1(e)(5)–(6) (2008) was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2006).

## B.

Although we find that a BIA streamlining decision is subject to judicial review, that holding does not yield the result Quinteros-Mendoza seeks. For, as the Government alternatively contends, the BIA's subsequent action moots the need

may be true at a very high level of generality, but we accommodate agency expertise through judicial restraint and appropriate deference to agency decisions, not by entirely foreclosing judicial review of those decisions.

to remand Quinteros-Mendoza's case to a three-member panel. In *In re J-B-N-*, 24 I. & N. Dec. 208 (2007), the BIA did refer to a three-person panel the precise issue raised by Quinteros-Mendoza—the proper interpretation of "one central reason" in 8 U.S.C. § 1158(b)(1)(B)(i) (2006). Because that three-person panel "establish[ed] a precedent" on this question, there is no longer a need for referral to a three-member panel in the case at hand. We therefore agree with the Government's contention and find this issue to be moot as applied to Quinteros-Mendoza.

### III.

We turn next to the merits of the BIA's final order in this case. In order to gain the relief Quinteros-Mendoza requests here, he must show that his persecution was "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A) (2006). Quinteros-Mendoza does not contend that his religion or political opinion constituted the sole motives for his persecutors' actions. To the contrary, he admits that the gang members' initial motivation for attacking him was either financial or personal. This thus constitutes a "mixed motive" case, in which a statutorily protected ground comprises only part of the persecution.

In response to differing standards applied to such mixed motive cases, Congress included in the REAL ID Act of 2005 a provision that required a protected ground in § 1101(a)(42)(A) to be "at least *one central reason* for persecuting the applicant." *Id.* § 1158(b)(1)(B)(i) (emphasis added). In *In re J-B-N-*, the BIA interpreted this provision to mean that "the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm. Rather, it must be a central reason for persecuting the respondent." 24 I. & N. Dec. at 214. The Board also emphasized that the REAL ID Act did

not "radically alter[ ]" the standard in mixed motive cases like Quinteros-Mendoza's. *Id.* Thus, the BIA did *not* hold that the REAL ID Act requires a protected ground to be *the* central reason or even a dominant central reason for persecution, only that it cannot be an "incidental, tangential, superficial, or sub-ordinate" reason. *Id.*

As both the IJ and the BIA noted, the record in this case indicates that money and personal animosity, and not religion or political opinion, motivated the initial assaults on Quinteros-Mendoza. Although attacks did occur at Quinteros-Mendoza's church, the record supports the BIA's findings that the gang members attacked him in numerous other locations—including on the bus, at his home, and in a neigh-boring town—and that the gang members demanded money throughout these encounters. The BIA also relied on ample evidence in concluding that the threats and attacks continued even after Quinteros-Mendoza ceased attending church and that the gang members targeted no other members of that church. Thus, Quinteros-Mendoza has provided no evidence that his religious or political beliefs were more than incidental or tangential to any part of the persecution he suffered.

In sum, the record lends adequate support for the findings of the IJ and the BIA that neither religion nor political opinion initiated, escalated, perpetuated, or otherwise constituted a central reason for the persecution against Quinteros-Mendoza. We therefore deny the petition for review.

*PETITION FOR REVIEW DENIED*