■ TROY HAZEL et al., Respondents, v KRISTAQ NIKA et al., Appellants. [836 NYS2d 573]—

Judgment, Supreme Court, Bronx County (Alan J. Saks, J.), entered August 31, 2005, awarding plaintiff, on a jury verdict, $200,000 and $250,000 for past and future pain and suffering, respectively, reversed, on the law, without costs or disbursements, and the matter remanded for a new trial.

As the record shows, at 7 o'clock on a Friday night in August,

plaintiff Troy Hazel used two reflectors to close an entire lane of traffic on Seventh Avenue between 39th and 40th Streets in Manhattan to change a tire. Before he had finished changing the tire, a taxicab pulled up between the reflectors to drop off a passenger and pick up new passengers. As the cab, operated and owned by defendants, respectively, pulled away, it ran over one of the reflectors. It is undisputed that the driver stopped and that Mr. Hazel approached the taxicab, but there is a sharp conflict in the testimony as to what transpired next.

Mr. Hazel testified that after putting his lug wrench down, he approached the cab driver, put his arms on the opened window frame and politely asked the driver to pay for the broken reflector. In response, according to Mr. Hazel, the driver cursed at him and drove off, running over Hazel's foot. On the other hand, the taxicab driver, defendant Nika, testified that Hazel came at him with a pipe, saying, "you are going to pay for this." With that, and at the insistence of his passengers, who urged, repeatedly, "Move, move, move. Go, go. He's crazy. He's going to kill us," the taxicab driver drove away from the scene, apparently not knowing that there had been any body contact. From his testimony, a jury, if it accepted the taxicab driver's account, could conclude that Hazel's own conduct in approaching the taxicab in a threatening manner and placing himself in a position of danger should the driver depart the scene quickly to avoid a possible physical confrontation, contributed to his injury.

While it is true that the taxicab driver testified that Hazel never got closer than six or seven meters of the taxicab, Hazel's own testimony places himself at the car window, close enough for the taxicab to make physical contact with his foot and right knee, thereby allegedly causing his injuries. A jury, properly charged on comparative negligence could well have accepted Hazel's testimony as to his location at the time the taxicab departed and, rejecting the taxicab driver's testimony that plaintiff never got closer than six meters (20 feet), accepted the driver's testimony that Hazel had approached the taxicab menacingly, holding a lug wrench. Juries are empowered to dissect the testimony of witnesses to accept what is credible and reject what is not (*Accardi v City of New York*, 121 AD2d 489, 490-491 [1986]; *see* PJI3d 1:22). The issue of comparative negligence is "almost always . . . a question of fact" and "almost exclusively a jury function" (*see Wartels v County Asphalt*, 29 NY2d 372, 379 [1972]). The refusal to charge comparative negligence was, in the circumstances, clear error mandating reversal.

In an effort to sustain its position that defendants' request

for a comparative negligence charge was properly denied, the dissent resorts to distorting the record and blindly accepting plaintiffs' version of the facts. The dissent asserts that there was no evidence that Hazel was holding the lug wrench after the taxicab driver's "initial observation." The driver's so-called "initial observation" was not part of a long, drawn out encounter; the "initial observation"—Hazel "coming toward" the cab, "holding a pipe" (concededly the lug wrench), "look-[ing] agitated," and saying, with a "very, very angry" voice, "you are going to pay for this"—coupled with the passengers' commands to "Go, go," was precisely the conduct that caused the cab driver to leave the scene. As the driver testified, "as soon as I saw him approaching me, I started pulling away from him." In addition, he testified, "I am thirty-five years old, and I have driving a cab . . . for five years, and I can distinguish, you know, between polite questions and threats." The dissent refers to the taxi driver's testimony that when he stopped at the traffic light at the intersection of 39th Street and Seventh Avenue, he observed Hazel in his rear view mirror holding a cell phone and not chasing the taxicab. This innocuous behavior, after the fact, is irrelevant. The basis for a comparative negligence charge is plaintiff's menacing conduct as he approached the taxicab.

While the dissent concludes that if the jury chose to believe Hazel rather than Nika as to the former's close proximity to the taxicab, "clearly [this defendant acted] negligent[ly]," this conclusion is irrelevant to our determination; it is not the question of the driver's negligence that divides us, but the question of whether the jury should have been able to consider Hazel's comparative negligence.

The dissent also recounts Hazel's actions as fact, based on his testimony, which is characterized as "unimpeached," and ignores the taxicab driver's testimony. That account is then supported by a further reference to the absence of any testimony that Hazel was "holding the lug wrench after [the driver's] initial observation," to conclude that there was no valid line of reasoning, based on the evidence, to support submission of the issue of comparative negligence to the jury. This analysis, as noted, ignores totally the taxicab driver's account of the incident and his testimony as to the frantic pleas of his passengers to "move. Go, go. He's crazy. He's going to kill us."

In this regard, we note the dissent's conclusion, unsupported by any legal authority, that the trial court can evaluate witness testimony and credibility in determining whether a jury instruction on a particular theory is warranted. This is, to be charitable, an incomplete and inaccurate statement of the law. In

determining whether such an instruction is warranted, the trial court can consider the evidence only in deciding if there is any valid line of reasoning which would permit the factfinder to conclude rationally that the plaintiff was negligent (*Perales v City of New York*, 274 AD2d 349 [2000]). And witness credibility has no place at all in the trial court's assessment.

We have considered the other arguments raised and find that they are without merit. Concur—Andrias, Sullivan and Mc-Guire, JJ.

Mazzarelli, J.P., and Williams, J., dissent in a memorandum by Williams, J., as follows: Although comparative negligence is usually a question for the jury, I find that the trial court properly decided the issue as a matter of law, since no valid line of reasoning based on the trial evidence would permit the factfinder to conclude rationally that the injured plaintiff (Mr. Hazel) was negligent (*Perales v City of New York*, 274 AD2d 349 [2000]). The majority finds that comparative negligence should have been charged based on taxicab driver Nika's testimony that states in relevant part that after he drove his taxicab over Hazel's reflector, he heard someone angrily saying "you are going to pay for this" and then, over his right shoulder, observed Hazel moving toward him from the sidewalk holding a "pipe." Nika alleges that Hazel's approach and the frantic urging of his panic-stricken passengers (whose identities Nika did not ascertain, and thus did not provide any evidence in these proceedings) convinced him to drive away, albeit slowly, maintaining a distance between the taxicab and Hazel of six to seven meters (approximately 20 to 23 feet), and that he never hit or ran over Hazel with the taxi.

By way of contrast, Hazel's unimpeached testimony, and that of his wife who was also present at the scene of the accident, established that Hazel arrived by car at 7th Avenue between 39th and 40th Streets at approximately 7:00 P.M. on August 25, 2000, a warm Friday night, to report for duty at his second job, Kermit Protection, an alarm response security agency. He parked on the west side of 7th Avenue, a one-way southbound street, and went up to Kermit's office to change into his uniform. When he returned to his car to retrieve his uniform shirt, Mrs. Hazel informed him that he had a flat tire. He advised Kermit of the situation and proceeded to change the driver's side rear tire of his car using a lug wrench. As he was finishing, Mrs. Hazel advised him that Nika had run over the reflector. Both stated that Hazel placed the lug wrench on the ground before moving only a couple of steps to speak with Nika in the taxi, which had stopped in the roadway parallel to, but

just behind, Hazel's car. They further stated that Hazel spoke calmly to Nika, not shouting, while leaning on his elbows against the stopped taxi's open passenger side front window, when Nika cursed at Hazel and suddenly and rapidly drove away injuring him. Hazel then reported the incident to Kermit Protection by radio and they called the police, who responded within two to three minutes.

Nika's testimony gives us a snapshot of Hazel behind him on the sidewalk and starting toward the taxicab holding the lug wrench. However, Nika's testimony never makes further mention of the lug wrench. If Nika is to be believed, Hazel would have had to move around the rear of his parked car to emerge on the roadway side and then move forward toward the taxicab. Nika further maintains that upon observing Hazel, he began pulling away slowly, that Hazel never got within 20 feet of the taxicab and that when he observed Hazel from the 39th Street intersection, less than a block away, where the taxicab stopped for a traffic light, Hazel was holding only a cell phone (radio) and not chasing the taxicab. Thus, contrary to the majority's assertion, Nika's testimony never placed the lug wrench in Hazel's hands after he first observed him, and the only other testimony states that Hazel placed the lug wrench on the ground before approaching the taxicab. In the absence of any evidence that Hazel was holding the lug wrench after Nika's initial observation, if a jury chose to believe Hazel's testimony rather than Nika's as to Hazel's location—which would be reasonable given the undisputed evidence that his injuries occurred on that occasion—then clearly Nika committed the sole negligent act by knowingly causing the taxicab to move suddenly while Hazel was in close proximity to it (see Vehicle and Traffic Law §§ 1146, 1162; see Gonzalez v Medina, 69 AD2d 14 [1979]). Under such circumstances, there was insufficient trial evidence and no valid line of reasoning, based on the trial evidence, to support submission of the issue of Hazel's comparative negligence to the jury, and the trial court properly declined to do so (see Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 516-517 [1980]; Perales v City of New York, 274 AD2d 349 [2000], supra). The trial court, in discharging its role as arbiter of whether the evidence warrants a jury instruction on a particular theory of the case, is entitled, in the exercise of its discretion, to evaluate witness testimony in that regard.

The majority credits Nika's implausible, inconsistent, self-serving testimony, which denied the possibility that he had any responsibility for Hazel's injuries, far more than is warranted and far more than did the trial court and jury, who apparently

chose to reject it in toto for lack of credibility on material issues, such as Hazel's proximity to the taxicab throughout the incident, Nika's failure to avail himself of several obvious, more rational options in handling the situation and Nika's statements as to his panic and Hazel's fury, despite his driving away slowly and stopping for a traffic light a short distance away without any pursuit from Hazel. The court instructed the jury on the emergency doctrine, namely, that if the jury found Nika suddenly faced a situation he could not have reasonably anticipated, did not cause or contribute to by his own earlier negligence, and to which he had to react quickly, he should not be found negligent if he reacted as a reasonably prudent driver would have in the same circumstances, even if it later appears that his choice was not the safest or most prudent. Despite this instruction, the jury firmly rejected this view of the evidence, finding unanimously in plaintiffs' favor on questions of liability. It should also be noted that when the court entertained counsels' requests for jury charges, Nika's counsel repeatedly stated that there was never any evidence that Hazel's conduct was belligerent or that he made a specific statement that he was going to attack Nika, and asked that such language be excluded from the court's summary of the evidence in favor of vaguer language to the effect that the cab driver merely feared for his safety. The court granted his request.

Essentially, the underlying incident was a garden-variety New York City fender-bender that resulted in injuries to Hazel solely due to Nika's conduct, a fact that was readily grasped by the court and jury. The verdict should not be disturbed.