(April 21, 2009)

■ DWIGHT BROWN, an Infant, by His Mother and Natural Guardian, CYNTHIA JOHNSON, et al., Appellants, v MINERVA G. MUNIZ et al., Respondents. [878 NYS2d 683]—

Order, Supreme Court, Bronx County (Mark Friedlander, J.), entered August 10, 2007, which granted defendants' motion for summary judgment dismissing the complaint, affirmed, without costs.

Plaintiff, an infant, was struck by a vehicle driven by defendant driver on a street that has a parking lane on each side and one lane for westbound traffic. Plaintiff testified at his deposition that he was playing on the sidewalk on the south side of the street when he ran between two parked cars into the street. He did not look to his right before running into the street and, as he was running through the middle of the street, he looked to his right and saw defendants' vehicle only inches away from

him. The driver testified at his deposition that, before the accident, two other children had run from the sidewalk into the street in front of his vehicle and, therefore, he was traveling approximately five miles per hour when plaintiff "came suddenly from between the [parked] cars." Asked when he saw plaintiff for the first time, the driver answered "[w]hen the accident happened"; asked to estimate the time that elapsed between his first seeing plaintiff and the accident, the driver answered "[l]ike a second"; subsequently asked "[d]id you actually see [plaintiff] come out from between the two parked cars," the driver answered "[w]hen I felt the impact nothing more."

Supreme Court correctly dismissed the action. The deposition testimony of both plaintiff and the driver establish that plaintiff, without warning and without looking in the direction of oncoming traffic, darted out between two parked vehicles directly into the path of defendants' vehicle, leaving the driver unable to avoid plaintiff (*see e.g. Afghani v Metropolitan Suburban Bus Auth.*, 45 AD3d 511 [2007]; *Sheppeard v Murci*, 306 AD2d 268 [2003]; *Wolf v We Transp.*, 274 AD2d 514 [2000]; *Miller v Sisters of Order of St. Dominic*, 262 AD2d 373 [1999], *lv denied* 94 NY2d 763 [2000]).

In concluding that a triable issue of fact exists as to whether the driver was negligent, the dissent focuses only on an isolated snippet of the driver's testimony. Thus, the dissent writes that the driver testified that "he saw plaintiff running out 'seconds' before the accident." At one point during his deposition, the driver was asked, "[w]hen you say [plaintiff] came out running when did you see him come out running?", to which the driver responded "[w]hen he was coming out, seconds." This response, even assuming it was the only testimony on point and fairly must be taken literally, would not establish anything more than that the driver saw plaintiff two seconds before impact (*see Miller, supra*). In any event, it was clarified later when the driver testified that he saw plaintiff (1) "[l]ike a second" before the accident and (2) as the impact between plaintiff and the vehicle occurred. As is evident, we "interpret" and "usurp[ ]" nothing. Rather, we have recounted the relevant portions of the driver's testimony and, viewing that testimony in its entirety and in context (*see Mitchell v Route 21 Assoc.*, 233 AD2d 485, 486 [1996]; *see also Hoverson v Herbert Constr. Co.*, 283 AD2d 237, 237-238 [2001]), we conclude that defendants' submissions established as a matter of law that the driver did not have time to react to avoid plaintiff. "Any contention by the injured plaintiff that [the driver] failed to observe what he should have observed is merely an attempt 'to ferret out speculative issues

to get the case to the jury' " (*Brown v City of New York*, 237 AD2d 398, 399 [1997], quoting *Andre v Pomeroy*, 35 NY2d 361, 364 [1974]).

The dissent labors to make plaintiff's case for him, suggesting that we can, and should, take judicial notice of the "fact" that a driver can react to an emergency situation in less than a second.* A number of problems, however, plague that suggestion. First, fairness may require that we "afford the parties the opportunity to be heard as to the propriety of taking judicial notice in the particular instance" (Prince, Richardson on Evidence § 2-202 [Farrell 11th ed]). Here, neither party requested that we take judicial notice of the "fact" that a driver can react to an emergency situation in less than a second, and thus the parties have not had the opportunity to address this issue. The resulting prejudice is particularly acute because of the novelty of the issue in this State—the dissent cites only a 1952 Eighth Circuit decision, a 1958 District Court decision from Delaware and a 1931 decision of the Supreme Court of Virginia. Second, and relatedly, the dissent cites no New York case law (and independent research has not disclosed any) indicating that we can take judicial notice of driver reaction time. In fact, New York authority cuts against the dissent's position (*see Murray v Donlan*, 77 AD2d 337 [1980], *appeal dismissed* 52 NY2d 1071 [1981] [court cannot take judicial notice of stopping distance of an automobile traveling at certain rate of speed]). At bottom, whether human reaction time is a subject of which a New York State court may take judicial notice is unclear and, in the absence of any discussion of this issue by the parties, we decline to notice a particular response time.

The dissent's "*cf.*" cite to *Ferrer v Harris* (55 NY2d 285 [1982])—a case factually distinguishable from this one—is not persuasive. In *Ferrer*, the driver of a vehicle struck a young girl who ran into the street. At trial, the driver testified that, as he was driving 15 to 20 miles per hour, he saw the girl step off the sidewalk and run between two parked cars and into the street. The driver also testified that he stopped his vehicle several feet away from the girl but that she ran into the driver's side door of the vehicle (*id.* at 290-291). Plaintiffs, the girl and her guardian, presented evidence that the girl was struck by the front of the vehicle and medical evidence that the injuries she sustained were not consistent with the driver's claim that she had run into his door (*id.* at 291). Plaintiffs claimed, citing New York City traffic regulations, that, while the posted speed limit on

---

* Our quarrel is not with the dissent's effort to make plaintiff's case for him, but only with the way the dissent endeavors to make that case.

the road was 30 miles per hour, the speed at which the driver was traveling (15 to 20 miles per hour) was unreasonable because of the presence of children in the area and a double-parked vehicle that reduced the driver's maneuverability (*id.*). In light of these facts, the Court of Appeals determined that the questions of whether the driver was negligent and whether he was faced with an emergency situation were for the jury (*id.* at 292-293). In the case before us, however, the uncontradicted evidence is that the driver did not see plaintiff leave the sidewalk and enter the street. According to the driver, plaintiff "came suddenly from between the [parked] cars," and plaintiff's testimony is consistent with the driver's account. Thus, unlike the facts in *Ferrer*, plaintiff darted into the street and the driver had no opportunity to avoid him. Concur—Gonzalez, P.J., Buckley, Catterson and McGuire, JJ.

Acosta, J., dissents in a memorandum as follows: I respectfully dissent because I think this 12-year-old plaintiff should not be denied his day in court based, not on what defendant driver said, but on what the majority, usurping the jury's fact-finding role, interprets the driver to have meant. The majority does not dispute that the driver testified that he slowed to 5 to 10 miles an hour and stopped in the middle of the street because he saw two children crossing the street approximately two car lengths ahead of him. He thereafter proceeded down the street at a speed of five miles an hour with his foot on the brake, while looking to his left for other children who might be crossing the street, when plaintiff suddenly ran out from between two parked cars on the left side of the street. The driver further stated that he saw plaintiff running out "seconds" before the accident, although he later stated that he saw plaintiff for "like a second."

Although I agree with the majority that defendants established their prima facie entitlement to summary judgment by the fact that plaintiff darted out between two parked cars, the driver's testimony raised triable issues of fact as to his own negligence, in particular, whether a reasonable person driving five miles an hour with his foot on the brake would be able to completely stop his vehicle after observing for "seconds" a pedestrian running across the street (*see Hazel v Nika*, 40 AD3d 430, 431 [2007] ["The issue of comparative negligence is 'almost always . . . a question of fact' and 'almost exclusively a jury function" (citation omitted)]).

In what can only be characterized as a "best defense is a good offense" strategy, the majority accuses me of making the case for plaintiff. It is the majority, however, that "interprets" the

evidence to deny plaintiff his day in court. Whether the driver actually meant that he saw plaintiff for a time interval simply too short for the human body to react is a question for the jury, not this Court. Whatever the driver meant, he should have been able to react and stop his vehicle in no more than one second. Driver reaction time of no more than a second has been judicially noticed, although not in New York (*see Standard Oil Co. v Crowl*, 198 F2d 580, 582 [8th Cir 1952] [applying Missouri law, "in the absence of proof to the contrary the reaction time of a normal person is presumed to be 3/4 of one second"]; *Ryans v Blevins*, 159 F Supp 234, 236 [D Del 1958], *affd on other grounds* 258 F2d 945 [3d Cir 1958] [court takes "judicial notice of the fact that it takes the average driver from 3/4 to 4/5 of a second to press down upon his brakes after discovering a danger-ous situation ahead"]; 29 Am Jur 2d, Evidence § 88 ["Some courts take judicial notice of an average driver reaction time that falls within a range of half a second to a full second"]; B. Finberg, *Judicial Notice of Drivers' Reaction Time and of Stop-ping Distance of Motor Vehicles Traveling at Various Speeds*, 84 ALR2d 979, § 2 [reaction time mostly taken to be "three-fourths of a second for the average man, but some cases have considered it to be one-half of a second, while others have held it to be at least one second"]).

The majority takes issue because neither party asked this Court to take judicial notice of normal human reaction time and because there are no New York cases on point. But that is wholly beside the point. This Court has the discretion to take judicial notice of facts (*First State Ins. Co. v J & S United Amusement Corp.*, 67 NY2d 1044, 1047 [1986], citing, inter alia, *Hunter v New York, Ontario & W. R.R. Co.*, 116 NY 615, 621 [1889] [on appeal, court may take judicial notice of facts "which are a part of the general knowledge of the country, and which are gener-ally known and have been duly authenticated in repositories of facts open to all, and especially so of facts of official, scientific or historical character"]; *Matter of Persing v Coughlin*, 214 AD2d 145, 149 [1995] [an appellate court may take judicial no-tice for the first time on appeal of facts not brought to the trial court's attention and may do so for the purpose of reversing the judgment]). I have no doubt that human reaction time is the same in all parts of the country, including Missouri and Dela-ware.

*Murray v Donlan* (77 AD2d 337 [1980], *appeal dismissed* 52 NY2d 1071 [1981]), relied on by the majority, is not dispositive of the issue in this case. In *Murray* the Court declined to take judicial notice of stopping distances, which are necessarily de-

pendent on many factors. Common knowledge, however, informs that a car traveling at five miles an hour can stop "almost instantly" (*see Virginian Ry. Co. v Bacon*, 156 Va 337, 347, 157 SE 789, 792 [1931]; *cf. Ferrer v Harris*, 55 NY2d 285, 293 [1982] [an emergency, such as a child running into the street, does not automatically absolve the driver from liability, rather the "standard . . . remains that of a reasonable man under the given circumstances, except that the circumstances have changed. Accordingly, the actor 'may still be found to be negligent if, notwithstanding the emergency, the acts are found to be unreasonable' (Prosser, Torts [4th ed], p 169)"]).

Nor do the four Second Department cases relied on by the majority require summary judgment in defendants' favor. In *Miller v Sisters of Order of St. Dominic* (262 AD2d 373 [1999], *lv denied* 94 NY2d 763 [2000]), the driver was traveling between 20 and 25 miles per hour and there is no indication that she had her foot on the brake pedal as the driver in this case did while traveling merely five miles per hour. The other three cases cited by the majority likewise do not indicate that the driver had his foot on the pedal or how fast the driver was traveling. Viewing the evidence in the light most favorable to plaintiff, the party opposing summary judgment, there are triable issues of fact, including whether the driver had no more than one second to react to this emergency and stop his vehicle. Accordingly, I would reverse.