IN THE

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2022

ARGUED: APRIL 20, 2023
DECIDED: OCTOBER 5, 2023

No. 22-995

KEVIN DOOLEY,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

————

Appeal from the United States District Court
for Southern District of New York
1:18-cv-7136 – Gorenstein, *Magistrate Judge.*

————

Before: CALABRESI, PARK, and LEE, *Circuit Judges.*

————

Plaintiff-appellant Kevin Dooley ("Dooley") appeals from a judgment of the United States District Court for the Southern District of New York (Gorenstein, *M.J.*). While riding his bicycle, Dooley collided with the open door of a car owned by the United States and operated by a United States employee. Dooley brought a claim for negligence against the United States, pursuant to the Federal Tort Claims Act. The district court found the United States liable, but concluded Dooley also acted negligently and was therefore partially liable. On appeal, Dooley contends, *inter alia*, that the district court erred in finding his negligence caused the accident. We agree. We therefore VACATE and REMAND.

Judge Park dissents in a separate opinion.

───────────────

MICHAEL AVILES, Michael J. Aviles & Associates, LLC, New York, NY, *in support of Plaintiff-Appellant.*

JENNIFER JUDE, Assistant United States Attorney (Christopher Connelly, Assistant United States Attorney, *on the brief*), *for* Damien Williams, United States Attorney for the Southern District of New York, New York, NY.

───────────────

CALABRESI, *Circuit Judge*:

This case arises from a dooring accident: a delivery man was riding his bicycle down Burke Avenue in the Bronx, when he hit the interior of the open door

of a U.S. government car parked by the curb. Because the car was owned by the federal government and was driven by a federal employee in the course of his employment, the plaintiff brought a claim for negligence against the United States pursuant to the Federal Tort Claims Act ("FTCA"). The district court found that the government employee acted negligently by opening the car door without checking for incoming traffic; it also concluded that the plaintiff's conduct was comparatively negligent and assigned 40% liability to the plaintiff. Under New York law, which governs this case, a court will find a plaintiff comparatively negligent, and reduce a damages award accordingly, only if a plaintiff's negligence was a proximate cause of the accident.[1] A defendant, furthermore, bears the burden of establishing both that a plaintiff's conduct was negligent *and* that a plaintiff's negligence was a proximate cause of the injury.

---

[1] Causation is typically described as having two components, causation in fact—a showing that the accident would not have occurred but for the plaintiff's wrong—and proximity—a showing that the plaintiff's wrong was sufficiently close in and significant in time, space, and foreseeability as to justify the plaintiff's responsibility. *See* W. Page Keeton, et al., Prosser & Keeton on Law of Torts §§ 41-42, at 263-65, 272–73 (5th ed. 1984). At times, New York courts have, perhaps confusingly, united these two components and spoken of the requirement as one of proximate cause, even where often, as in this case, the issue is primarily one of cause in fact. *Compare Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981) (referring to causation in general terms) *with Solomon by Solomon v. City of New York*, 489 N.E.2d 1294, 1294 (N.Y. 1985) (referring only to proximate causation).

The district court's finding that the plaintiff here acted negligently may, in several respects, be viewed as dubious on this record. But, and determinatively, the district court failed to make the findings necessary to any holding that the plaintiff's negligent conduct sufficiently caused the collision so as to make the plaintiff 40% responsible for the damages. Accordingly, and without reaching any issue of plaintiff negligence, we VACATE and REMAND for reconsideration consistent with this opinion.

## BACKGROUND

On May 18, 2017, Sergeant Luis Disla ("Disla"), a recruiter for the United States Marines, parked his assigned government vehicle on Burke Avenue in the Bronx, near a high school he was scheduled to visit. Around the same time, Kevin Dooley ("Dooley"), a delivery man employed by a local restaurant, was riding a motorized bicycle down Burke Avenue. Dooley was riding his bike in the space between the parked vehicles and the edge line of the westbound traffic lane of Burke Avenue.[2] According to Dooley, he was driving straight, "in the middle" of

---

[2] In his testimony, Dooley characterized this space as a bike lane. Photographs taken at the time of the accident, as well as Disla's testimony, indicate the space was not then clearly marked as a bike lane and only became a marked bike lane after the accident.

the space between parked vehicles and the moving-traffic lane and was traveling

at around 15 miles per hour. App'x. 84. The weather conditions were clear, and

the posted speed limit was 25 miles per hour. Dooley recalled that traffic on the

main lane that day was light.

As Dooley approached, Disla opened the car door. Disla testified that he

did not recall looking in his mirror to check for any oncoming traffic before

opening his door.[3] Dooley averred that he saw Disla's parked car from a distance,

but that he did not see an open door. Dooley hit the interior of the car's open door.

Dooley stated that the right-hand side of his bicycle and the open door made

contact.[4]

After hitting the car door, Dooley fell to the ground. Seeing Dooley injured,

Disla stepped out of his car and assisted Dooley. Disla testified that Dooley spoke

with slurred speech and angrily cursed at him. When emergency medical services

responded to the scene, Dooley argued with them. Dooley stated that immediately

---

[3] In deposition statements, at one point, Disla stated that he had looked into his side mirror to ensure that there was no bicycle traffic, but he later withdrew this statement as a recollection of habit and practice rather than of his specific actions on the day of the collision.

[4] The district court dismissed an alternative theory, presented by the defendant, that Disla had only unlatched and not fully opened the car door at the time of the collision.

after the accident, he felt pain in his right knuckles and left leg. He sought medical assistance later that night and again eight days later. Dooley sustained injuries to his left knee and ankle, and he underwent knee surgery and other medical procedures to treat his injuries.

Dooley filed a complaint against the United States, pursuant to the FTCA.[5] Dooley claimed that Disla acted negligently when he "suddenly" opened the car door without exercising appropriate caution, and that, because the accident took place as Disla was performing functions within the scope of his employment, the United States was liable.

Prior to trial, Dooley and his domestic partner, Sherman Peterson ("Peterson"), were deposed. Dooley stated that he smokes marijuana daily, but that he does not smoke during work or on days he makes deliveries, and that he had not consumed any drugs or alcohol on the day of the accident. Peterson, with whom Dooley has lived for more than fourteen years, also testified that Dooley

---

[5] Consistent with the FTCA's requirements, Dooley had previously filed an administrative complaint with the relevant agency.

smokes marijuana regularly but stressed that Dooley does not smoke on days that he works, nor when running deliveries.

Dooley moved *in limine* to preclude admission of evidence of his use of marijuana and alcohol. The district court granted this motion with respect to evidence of Dooley's alcohol use, finding the government had not argued that it intended to offer evidence regarding Dooley's use of alcohol prior to the day of the accident, nor that Dooley had a habit of alcohol consumption. The district court, however, denied Dooley's motion with respect to evidence that Dooley had consumed alcohol on the day of the accident, was under the influence of alcohol at the time of the accident, or habitually consumed marijuana.

The district court conducted a bench trial and heard testimony from Dooley, Peterson, and Disla. Dooley and Peterson again testified that while Dooley regularly smoked marijuana, he did not smoke marijuana on the day of the accident.

The district court found Dooley not "fully credible" because he was highly interested in the outcome of the case and, occasionally, his testimony was not in accord with other evidence in the record. Specifically, the district court held that Dooley's testimony that he does not smoke marijuana on days he is working

lacked credibility, as there was uncontroverted testimony in the record that he smokes marijuana multiple times a day.

Similarly, the district court determined that Peterson's testimony was not credible because, as Dooley's domestic partner, he was also interested in the outcome of the case, for he stood to benefit financially from any award of damages, and because Peterson's testimony was, at times, inconsistent. In particular, the district court found that Peterson's trial testimony that Dooley did not smoke marijuana on the day of the accident was at odds with his deposition testimony that Dooley smoked marijuana every day.

The district court also concluded that statements made by Disla after the accident, which directly contradicted assertions he made in a contemporaneous incident report, were not credible. Nonetheless, the district court deemed much of Sergeant Disla's trial testimony credible, particularly with regard to Dooley's seeming impairment at the time of the accident, as "there was no evidence that the outcome of [the] lawsuit would have any effect on him or his career." App'x. 534; *see also* App'x 537–38.

The district court heard from three expert witnesses. Two of these, Dr. McMahon and Dr. Bosco, testified as to the extent of Dooley's physical injuries.

The third, Dr. David Bizzak, a mechanical engineer proposed by the government, conducted an accident-reconstruction analysis, but the district court "d[id] not find his theory [to be] the most likely explanation for what occurred." Although the district court stated that it "found Dr. Bizzak to be credible on some points," the only aspect of Dr. Bizzak's report on which the district court clearly relied was his estimation, based on photographs from the day of the accident, that the distance between the driver's side of the car and the painted edge line of the westbound lane on Burke Avenue—that is to say, the space where Dooley was riding—was about seven feet wide and that Dooley was traveling "very close to vehicles parked alongside the street."

The district court expressly rejected Dr. Bizzak's contention that on the day of the accident Disla's door was "unlatched" but "not yet pushed . . . open." The district court did not anywhere state that it accepted Dr. Bizzak's view that "[h]ad [Dooley] been riding in the center of the parking lane, he . . . would have safely passed by the parked car *with its unlatched door*" (emphasis added).

There is no testimony accepted as credible by the district court as to the amount of time that elapsed between Disla opening his door and Dooley hitting

it.[6] Nor was there any other evidence in the record that would allow the district court to determine whether any meaningful amount of time elapsed between Disla opening the door and Dooley hitting the door such that Dooley may have avoided the opened door. The district court made no findings on this question.[7]

## HOLDING

At the conclusion of the trial, the district court found that both Dooley and Disla were at fault for causing the collision and apportioned liability 60% to the United States and 40% to Dooley. The district court determined that Disla was partly at fault because it was "likely that there was some ability on his part to have been more prudent in checking for vehicles before opening his door." App'x. 538.

---

[6] In a statement, which the district court did not credit because it contradicted statements in the incident report that Disla had submitted to his employer, Disla claimed that he had opened the door and then reached back in to grab his cell phone prior to the collision. Dooley did testify that he attempted to brake when he saw the car door fully open. But he gave no indication as to time, other than his statement that he "probably" saw the parked car (but not any open door) for about twenty to thirty seconds before the accident occurred.

[7] The nearest thing to a statement as to timing by the district court was its speculation, while discussing damages, that the apparent lack of damage to the car door "could be explained by the possibility that [the] plaintiff had braked upon seeing the open door and ended up with just enough speed to cause hyperextension of the door but not fast enough to cause any actual damage to the interior of the door." App'x. 537.

The district court concluded Dooley was also negligent in three ways. First, the district court found that Dooley was traveling "close" to parked cars. Second, although Dooley "admit[ted] to going 15 miles per hour," the district court found "it likely he was going initially faster and at a rate that was too high for safe travel so close to parked cars." App'x. 538. Third, the district court found it was "more likely than not that Dooley was impaired in his ability to operate the bicycle with an appropriate degree of attention to the conditions of the road." *Id*.

The district court then concluded that Dooley bore "a degree of fault" for the collision "because the space between the lane of moving traffic and the parked cars was quite large" and offered "an enormous amount of space for a bicycle to maneuver itself and to avoid cars." *Id*. It also found that "[a] reasonable bicyclist will avoid coming close to parked cars on the right when abundant space is available to his left." *Id*. But the district court never determined what speed would have been reasonable or what distance from the parked cars would have been appropriate.

As to damages, the district court concluded that while Dooley may have suffered significant pain following the accident, there was no evidence to support a finding of future pain and suffering. Accordingly, the district court awarded

Dooley $175,000 in past pain and suffering damages and did not award any future

pain and suffering damages. But due to its finding of comparative negligence and

the apportioned liability, the district court found that Dooley was entitled to

$105,000.

Dooley then filed an appeal. Dooley challenges the district court's finding

that he was comparatively responsible for the accident, the district court's

admission of evidence that he habitually smoked marijuana, and the amount and

type of damages awarded by the district court.

## STANDARD OF REVIEW

In examining a judgment entered after a bench trial, we review the district

court's conclusions of law and its application of law to the facts *de novo*, and we

review its findings of fact for clear error. *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89,

95 (2d Cir. 2012). We examine a district court's findings of fact in support of an

FTCA damages award for clear error. *Malmberg v. United States*, 816 F.3d 185, 197

(2d Cir. 2016).

## DISCUSSION

### I.

This is an action for negligence, brought pursuant to the FTCA against the United States. The FTCA waives the sovereign immunity of the United States for certain classes of torts claims, including damages claims for personal injury "caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005). In resolving FTCA claims, "courts are bound to apply the law of the state . . . where the [tort] occurred." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (internal quotation marks omitted). Thus, because the accident took place in the Bronx, we turn to New York torts law to resolve this dispute.

Under New York law, a torts plaintiff like Dooley, seeking to prove a defendant's negligence must show "(1) the existence of a duty . . . ; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Akins v. Glen Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981). To determine the existence and scope of a duty, a court will consider "whether the relationship of the parties is such as to give rise to a duty of care . . . , whether the plaintiff was within the zone of foreseeable harm . . . and whether the accident was within the reasonably foreseeable risks." *Di Ponzio v. Riordan*, 679 N.E.2d 616, 618 (N.Y. 1997) (internal

13

citations omitted). A "defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Mazella v. Beals*, 57 N.E.3d 1083, 1090 (N.Y. 2016) (internal quotations omitted); *see also Derdiarian v. Felix Contracting Corp.*, 414 N.E.2d 666, 670 (N.Y. 1980) ("To carry the burden of proving a prima facie [negligence] case, the plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury.").

## II.

As Dooley's claims arise from a road collision, we first focus on the duties owed by motorists to bicyclists.

In New York, the Vehicle and Traffic Law ("VTL") defines the duties of motorists, and "[a] violation of the [VTL] constitutes negligence as a matter of law." *Desio v. Cerebral Palsy Transp., Inc.*, 994 N.Y.S.2d 681, 682 (N.Y. App. Div. 2014). As relevant here, the VTL provides that "[n]o person shall open the door of a motor vehicle on the side available to moving traffic unless and until it is reasonably safe to do so." N.Y. Veh. & Traf. Law § 1214 (McKinney 2023).

Moreover, a motorist also has a duty "to keep a proper lookout and see what can be seen through the reasonable use of his or her senses to avoid colliding with other vehicles." *Carias v. Grove*, 131 N.Y.S.3d 99, 100 (N.Y. App. Div. 2020). A motorist must "keep a reasonably vigilant lookout for bicyclists." *Palma v. Sherman*, 867 N.Y.S.2d 111, 112 (N.Y. App. Div. 2008); *see also Garcia v. BLS Limousine Serv. of N.Y., Inc.*, 154 N.Y.S.3d 758, 758-59 (N.Y. App. Div. 2021) (holding a driver acted negligently when he opened the door of his car when it was not safe to do so and struck a bicyclist).

Disla testified that he did not recall looking at his rear mirror, or otherwise taking any step to ensure there was no oncoming bicycle or pedestrian traffic, before opening the door. The district court, thus, correctly found that Disla acted negligently when he failed to prudently check for incoming traffic before opening his door, as required of all motorists by state law.[8]

---

[8] In this respect, Disla's negligence and proximate cause are established as a matter of law under New York law. One might question whether the district court's statement, that it was "likely that there was some ability on [Disla's] part to have been more prudent in checking for vehicles before opening his door," fully captures the extent of Disla's responsibility under New York law. App'x. 538. This could erroneously affect the allocation of damages the court made. Since we vacate on the basis of other errors, we need not consider this matter further.

A determination that one party in a dooring accident acted negligently, however, does not settle the dispute as "there may be more than one proximate cause of an injury." *Mazella*, 57 N.E.3d at 1091 (quoting *Argentina v. Emery World Wide Delivery Corp.*, 715 N.E.2d 495, 498 n.2 (N.Y. 1999)). New York has adopted a comparative negligence framework, and in an action to recover damages for personal injury, "the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the [plaintiff] . . . bears to the culpable conduct which caused the damages." N.Y. C.P.L.R. § 1411. In such circumstances, "liability is split between plaintiffs and defendants based on the relative culpability and causal significance of their conduct." *Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296, 300 (2d Cir. 1997).

In the context of a dooring accident, a plaintiff's own violation of the traffic law could be a reason for finding a plaintiff's conduct was negligent. Under the VTL, a bicyclist, like Dooley, "is required to use reasonable care for his or her own safety, to keep a reasonably vigilant lookout for vehicles, and to avoid placing himself or herself in a dangerous position." *Palma*, 867 N.Y.S.2d at 113. At the same time, a bicyclist who exercises due care is entitled to assume that other

bicyclists and vehicle drivers will also obey the statutes governing traffic.[9]  *Id.*; *see*

*also Rosenberg v. Kotsek*, 837 N.Y.S.2d 343, 344 (N.Y. App. Div. 2007).

For a negligent plaintiff to be held liable, however, the defendant bears the

burden of showing not only that the plaintiff was negligent, but that such

negligence was a cause of the accident.  Under New York law, "evidence of

negligence is not enough by itself to establish liability, for it must also be proved

that the negligence was a proximate, or legal, cause of the event that produced the

harm sustained by the plaintiff."  *Hain v. Jamison*, 68 N.E.3d 1233, 1236-37 (N.Y.

2016) (internal quotations marks omitted); *see also Arbegast v. Bd. of Educ. of S. New*

*Berlin Cent. Sch.*, 480 N.E.2d 365, 370 (N.Y. 1985) ("[W]hat the [comparative

negligence] statute requires comparison of is not negligence but conduct which,

for whatever reason, the law deems blameworthy, in order to fix the relationship

of each party's conduct to the injury . . . .  Comparative causation is . . . the more

accurate description.").  By contrast, "proximate cause will be found lacking where

---

[9] And this expectation, that others abide by their own duties of care, also informs whether a particular risk is foreseeable and, in turn, whether a motorist's failure to anticipate a danger, if another driver abided by the applicable rules and regulations, constitutes negligence, and, if so, how much.

the . . . act merely 'furnished the occasion for' but did not cause" the injury. *Hain*,

68 N.E.3d at 1238 (quoting *Derdiarian*, 414 N.E.2d at 666).[10]

The existence of negligence, when clear enough, may constitute evidence of

causation, if the behavior that constitutes negligence sufficiently increases the risk

of what, in fact, actually occurred. *See Liriano v. Hobart Corp.*, 170 F.3d 264, 271 (2d

Cir. 1999) ("When a defendant's negligent act is deemed wrongful precisely

because it has a strong propensity to cause the type of injury that ensued, that very

causal tendency is evidence enough to establish a *prima facie* case of cause-in-

fact."); *see also Martin v. Herzog*, 126 N.E. 814, 816 (N.Y. 1920) (Cardozo, J.). A party,

thus, need not "introduce detailed evidence of but-for causal connection," *Liriano*,

170 F.3d at 272, between negligent conduct and injury, where (a) the other party's

conduct is manifestly negligent, and (b) where that manifest negligence, in fact

and clearly, increased the likelihood of the injury that actually occurred. *Cf.*

*Zuchowicz v. United States*, 140 F.3d 381, 390-91 (2d Cir. 1998) (describing

circumstances in which, in view of manifest negligence, "it is up to the negligent

---

[10] Since, in New York, comparative negligence is defined as including relative causation, when plaintiff challenged the court's finding of comparative negligence, he necessarily challenged the finding of causation in all its forms. As a result, the dissent is simply wrong in its assertion that he did not raise the issue of causation.

party to bring in evidence denying *but for* cause"). Absent both of these, a party claiming negligence must provide some more direct evidence that such allegedly negligent conduct was also a cause of the injuries.

We therefore must consider, if Dooley is to be held liable, whether the defendant has shown that his conduct was not only wrongful or negligent, but also was a cause of the event that resulted in his injuries.

**III.**

There are reasons to doubt whether the district court correctly determined that Dooley was negligent in some of his conduct.[11] But, assuming *arguendo* that the district court correctly determined that Dooley's behavior was negligent, we conclude that Dooley's asserted negligence was not shown to be a cause of either the accident or of his injuries.

The district court concluded that Dooley was negligent in three ways: by speeding, riding too close to the parked cars, and "more likely than not" being "impaired" at the time of the accident. App'x. 538. But the district court did not

---

[11] We do not question the district court's findings of fact, to which we owe deference. Rather, our doubts arise from the district court's determination, upon application of the law to these facts, that Dooley's conduct constituted negligence.

make findings as to: (a) what speed would not have been negligent; and (b) what distance from the parked car was required. It made no findings as to how Dooley's conduct—had he not acted negligently—would have avoided his injuries. And, in this respect, we note that if the district court erroneously found causation as to any one of the grounds it relied on, a vacatur and remand is required. This is so because the assessment of Dooley's liability at 40% was based on his being responsible in all three ways. And, if he was not responsible in all of these ways, the damages properly charged to him might well be less.

### A.

First, the defendant failed to establish why Dooley's alleged speeding was a cause of his injuries. Dooley testified that he rode his bicycle at 15 miles per hour, well under the 25 miles-per-hour speed limit posted on Burke Avenue. Nevertheless, the district court, without pointing to any support in the record, and without specifying whether it believed that Dooley was driving above or below the posted speed limit, found that it was likely that Dooley was initially riding "at

a rate that was too high for safe travel so close to parked cars."[12] App'x. 538. By driving at an unspecified high speed, the district court concluded, Dooley acted negligently, because "a prudent bicyclist will reduce speed" when travelling close to parked cars. *Id.*

But even assuming that Dooley was negligently speeding, the district court made no finding of fact that would establish that Dooley's speeding was a cause of the accident. The record does not show the time between the opening of the car door and its being hit by the bicycle. There is nothing in the record that shows that there was enough time for Dooley to swerve in a different direction to avoid the door or sufficiently to brake and thereby avoid the collision had he been driving at a lower speed. Without a finding of what speed would have been proper, and how, had Dooley been riding at that speed, there would have been time to avoid

---

[12] Significantly, New York courts have found that bicyclists traveling at speeds under the speed limit and within the average cruising speed for bicycle traffic are not comparatively negligent for failing to brake in time to avoid a collision. *See, e.g., Zhong v. Matranga*, 173 N.Y.S.3d 238, 242 (N.Y. App. Div. 2022); *Sarac-Marshall v. Mikalopas*, 4 N.Y.S.3d 195, 196 (N.Y. App. Div. 2015).

the collision, causation has not been shown.[13]   Whatever negligence Dooley's

speeding may have constituted, it was not shown to be a cause of the accident.

**B.**

We next consider the district court's determination that Dooley acted

negligently by riding his bicycle while impaired by marijuana.  But even if the

district court could find that Dooley was so impaired, there is no evidence in the

record sufficient to meet defendant's burden of showing that such impairment was

a cause of the accident.

The district court determined that Dooley was likely riding his bicycle while

impaired, based on: (a) the uncontroverted evidence that Dooley was in the habit

of smoking marijuana daily; (b) its finding that Dooley's and Peterson's testimony

that Dooley refrained from smoking on work days or on deliveries was not

---

[13] This is analogous to the celebrated "darting out" torts cases, where a speeding driver is not held liable for hitting a child who "darts out" into the road, and there is no evidence in the record that the driver had enough time to avoid a collision.  *See* W. Keeton, et al., *supra*, § 29, at 162-63; § 44, at 306; *see also Zhong*, 173 N.Y.S.3d at 241 (holding defendant not liable where defendant "was left with no time to react, stop, or maneuver around plaintiff to avoid striking [plaintiff] when she darted out . . . into the middle of the bicycle lane"); *Brown v. Muniz*, 878 N.Y.S.2d 683, 685 (N.Y. App. Div. 2009) (holding defendant not liable where "driver did not have time to react to avoid plaintiff").

credible; and (c) Disla's testimony at trial.[14]  Disla stated that he believed Dooley was "under the influence of something" at the time of the collision, because "[Dooley's] words were slurred," and "[t]hey tied into each other."  App'x. 238. Disla also stressed that Dooley "was angry, cursed at [him] multiple times," and was "uncooperative as far as trying to take [his] help and the help of the EMTs." *Id*.

The district court relied on Disla's testimony because it determined that, as to Dooley's behavior after the collision, he was a credible witness.[15]  That assessment was predicated on a misreading of Disla's interest in the outcome of the case.  Specifically, the district court found that "there was no evidence that the outcome of [the] lawsuit would have any effect on him or his career," and that he was thus "not interested" in the outcome of the lawsuit.  App'x. 534.

It is true that, pursuant to the FTCA, were the district court to find that Disla acted negligently, his employer, the United States, would be financially liable.

---

[14] The district court also referenced Dooley's "refusal to cooperate . . . his cursing and his leaving the scene before obtaining any medical assistance" as indicating "that he was acting with a . . . lack of control."  App'x. 538.  The court predicated those references on Disla's testimony.
[15] It is noteworthy that the district court found Disla not credible as to at least one of his accounts of the events—written several days after the accident—which contradicted his contemporaneous description of the collision.

Disla's employer, however, could still hold him responsible for his conduct, and impose an appropriate reprimand or penalty. Indeed, in enacting the FTCA, Congress sought to "shift liability costs away from the individual employees and place them on their employer: the United States." *Carroll v. Trump*, 49 F.4th 759, 765 (2d Cir. 2022). But Congress certainly did not limit an employer's ability to sanction a federal employee for negligent misconduct. *Id.* at 770 n.8 (discussing different ways in which federal employees covered by the FTCA, including the President, may still be subject to discipline or sanction for misconduct). In finding Disla had no interest in the outcome of the case, the district court ignored the impact that a non-monetary, disciplinary sanction might have on Disla's career.

If Disla's statements regarding Dooley's erratic behavior were not credible, then there was no evidence on the record, other than evidence of habit, to corroborate that Dooley was impaired at the time of the accident. But, under New York law, evidence of habitual marijuana use, alone, may be insufficient to show Dooley was actually impaired at the time of the accident. *See People v. Cruz*, 399 N.E.2d 513, 516 (N.Y. 1979); *People v. Kahn,* 610 N.Y.S. 2d 701, 703 (N.Y. Crim. Ct. 1994). There are, therefore, reasons to doubt the adequacy of the district court's

conclusion that Dooley acted negligently because he was impaired when the accident occurred.

But, in the end, a finding that Dooley was impaired, even if correct, still does not show that such impairment was a cause of the accident so as to render Dooley liable. For Dooley's alleged impairment to have been a proximate cause of the collision, and for Dooley therefore to be liable, Dooley must have lacked the ability to act as a prudent bicyclist would have at the time the collision occurred. More specifically, Dooley's supposed impairment must have made it more difficult for him to avoid hitting the open door. And such an assessment, again, depends on the time between the opening of the door and its collision with Dooley's bicycle. As with Dooley's alleged speeding, for Dooley's alleged impairment to have made a difference, there must have been sufficient time during which a non-impaired plaintiff would have acted differently from an impaired one. Without such evidence, the defendant has made no showing of causation.

### C.

Finally, the district court failed to explain why Dooley's failure to ride his bicycle at a greater distance from the parked cars was a substantial cause of his injuries.

The district court concluded that Dooley breached his duty of care by driving too close to cars parked along the curb. At the time of the accident, there was no marked bicycle lane on Burke Avenue. Dooley drove his bike in the shoulder, a dedicated space between the sidewalk and the traffic lane. This is where bicyclists can ride with relative ease, avoiding the vehicular traffic in the main lane.[16] Relying on an estimate by the defendant's expert witness, the district court concluded that the space between the parked cars on one edge of the shoulder and the main traffic lane on the other edge was about seven feet. Dooley testified that he drove in the middle of the lane – by the district court's estimate – at around three-and-a-half feet from most of the cars parked along the shoulder.

Riding "so close" to the parked cars, the district court concluded, was negligent because a reasonable bicyclist would have ridden at a greater distance from parked cars, closer to the edge of the main traffic lane. While riding on the shoulder, prudent bicyclists are reasonably expected to remain alert to dangers

---

[16] "[A]ny bicycle . . . shall be driven either on a usable bicycle . . . lane or, if a usable bicycle . . . lane has not been provided, near the right-hand curb or edge of the roadway or upon a usable right-hand shoulder in such a manner as to prevent undue interference with the flow of traffic except when . . . reasonably necessary to avoid conditions that would make it unsafe to continue along near the right-hand curb or edge." N.Y. Veh. & Traf. Law § 1234(a) (McKinney 2023).

arising from cars traveling down the main traffic lane, vehicles parked or entering and exiting parking spots, and other bicyclists. *See, generally*, *Palma*, 867 N.Y.S.2d at 113. The question raised by the district court, however, is whether, to comply with their duty of care, bicyclists must ride at a particular distance from parked cars. The VTL does not impose such a specific requirement on bicyclists. Nor, and significantly, did the district court specify how much further away from the parked cars, and closer to the main traffic lane, Dooley or any other reasonable bicyclist should have been riding his bike.

Given that we do not have any evidence as to the time between the door opening and the collision, it is hard to see how the accident could have been avoided, unless Dooley was so close to the main traffic lane that even had the door opened as he rode by, it would not have hit his bicycle. Notably, the district court did not come close to holding that Dooley should have been driving that near the main traffic lane. And such a holding, in view of any cyclist's reasonable fear of driving too close to the traffic lane, would have been dubious.

The dissent asserts that the district court did hold that Dooley could have safely avoided the collision by riding closer to the traffic lane. The sole possible factual basis for such a holding is a comment by the government expert, Dr.

27

Bizzak. Significantly, however, the court rejected much of Dr. Bizzak's testimony, and the only part of his testimony the court clearly accepted was the size of the space between moving traffic and the parked cars.

Under the circumstances, it is once again hard to see how the defendant has established causation. There is simply no evidence sufficient to say that had Dooley been riding where it was reasonable for him to ride, the accident would have been avoided.

Here too, then, as with the district court's conclusions with respect to speed and impairment, the defendant has not established causation. Assuming that the district court correctly defined Dooley's duty of care, there is no evidence that compliance with such behavior would have avoided the accident. Without such evidence of causation, charging Dooley with comparative negligence was error.[17]

---

[17] The dissent reads well, but I fear it misses the most basic causation requirement in torts. Leave aside that it ignores applicable New York law on evidence of impairment, on what is speeding on a bicycle, and on where bicyclists should ride when there is no demarcated bike lane. Leave aside that conclusory statements by trial courts as to causation and negligence, which are not based on findings of fact, are not due deference on appeal. Even if those flaws could be ignored, the district court opinion cannot stand. Without a finding as to the time between the door opening and the collision, there is no way of concluding that speeding or impairment or, probably, where on the shoulder plaintiff was riding increased the chances of the accident. Without such a finding, the case is like that of the speeder who happens to be under a tree when it falls. *Berry v. Sugar*

* * *

It is possible that, on remand, appropriate evidence of causation may be found as to some of Dooley's allegedly negligent behavior. In this respect we repeat that if the district court ultimately erred with respect to Dooley's negligence being a cause of the accident as to any of the three grounds it relied upon, the allocation of damages must be re-evaluated. As noted above, Dooley's relative responsibility, which the court deemed 40%, depended on the district court's finding that Dooley was responsible in all three ways. If any of these was erroneous, Dooley's responsibility would be less and, hence, would need to be re-calculated.

---

*Notch Borough*, 191 Pa. 345, 43 A. 240 (1899). That case is in every torts case book, and, like the darting out cases cited in the opinion, it is there as a classic example of no liability on the speeder. There is no liability because the requirement of causation is not met!

Some writers call this a failure to show a causal link. More classically, it is treated as a failure to show proximate cause. It is, incidentally, analogous to the failure to prove loss causation in securities fraud cases with which federal judges are understandably more acquainted.

In any event, it is possible that the plaintiff was speeding. It is possible that the plaintiff was riding too close to the parked cars. It is possible that he was impaired, and it is possible that had he not been negligent in one of these ways he could have avoided the accident. But, contrary to the dissent, the defendant presented no evidence that could support such a conclusion.

**IV**.

For substantially the reasons given by the district court, we find no error in that court's assessment of total damages and in its denial of damages for future pain and suffering.  We affirm those findings.

****

For all the above reasons, the district court's holding is AFFIRMED with respect to the extent of total damages and VACATED with respect to the allocations of these damages between plaintiff and defendant.  The case is remanded for further proceedings consistent with this opinion.

PARK, *Circuit Judge*, dissenting:

Kevin Dooley rode an e-bike down a New York City street while probably high on marijuana and going too fast. Although there was plenty of space for bicycles, he chose to ride close to a row of parked cars and ran into an opened door. He thus contributed to his own injuries, diminishing his damages. The district court made these findings after a three-day trial. Dooley seeks reversal for clear error. But there was no such error, so the majority reverses instead based on a supposed legal error that the district court did not make and that Dooley did not raise. We routinely warn litigants against "disguising their claims of error as 'questions of law.'" *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006). But the majority does just that, and like Dooley, it fails to stay in its lane. I respectfully dissent.

First, the majority claims that the district court did not find causation, but this is incorrect. *See* Maj. Op. at 4, 20-28. The order speaks for itself:

> If I find that plaintiff was negligent and that his negligence contributed to causing the accident, I must then apportion the fault between the plaintiff and the defendant. . . . [W]e credit Disla's testimony that Dooley appeared impaired, particularly given that Dooley was a habitual marijuana smoker. We thus find it more likely than not that Dooley was impaired in his ability to operate the bicycle with an appropriate degree of attention to the conditions of the road. . . . We also find that Dooley bears a degree of fault because the space between the lane of moving traffic and the parked cars was quite wide—7 feet wide—which is an enormous amount of space for a bicycle to maneuver itself and to

avoid cars. A reasonable bicyclist will avoid coming close to parked cars on the right when abundant space is available to his left. And when the necessity of traffic requires being close to a parked car, a prudent bicyclist will reduce speed. Plaintiff . . . was going initially faster and at a rate that was too high for safe travel so close to parked cars. . . . Having considered the evidence, I apportion fault on the accident 40 percent to plaintiff.

App'x at A-532, A-537 to -38. Based on these findings, the district court reasonably concluded that Dooley's negligence played a role in causing the accident. Specifically, Dooley was "more likely than not . . . impaired in his ability to operate the bicycle with an appropriate degree of attention"; his lane positioning left insufficient space "to maneuver . . . and to avoid cars"; and his speed "was too high for safe travel so close to parked cars." *Id*. at A-538.[1]

The majority says this is not enough, and it faults the district court for failing to make additional findings about (1) "why Dooley's alleged speeding was a cause of his injuries," (2) how his impairment by marijuana "was a cause of the accident," and (3) why his failure to

---

[1] Disla testified that Dooley—an admitted daily marijuana user—appeared to be "under the influence of something" immediately following the accident, either "drunk or high," "slurr[ing]" his words, and refusing "the help of the EMTs." App'x at A238, A287. The government's accident reconstruction expert, Dr. David J. Bizzak, opined that Dooley traveled "very close to vehicles parked alongside the street, as opposed to within the center of the lane available for him to travel, which was approximately 7 feet wide." App'x for Appellee at DA24; *cf*. N.Y.C. DEP'T OF TRANSP., STREET DESIGN MANUAL 70 (3d ed. 2020) (noting that a standard unprotected bicycle lane in New York is five to six feet wide). "Had [Dooley] been riding in the center of the parking lane, he . . . would have safely passed by the parked car." App'x for Appellee at DA25.

2

ride "at a greater distance from the parked cars was a substantial cause of his injuries." Maj. Op. at 20, 22, 25.[2] But as the majority notes in its discussion of the legal standards, New York law does not require findings of but-for causation. *See id*. at 18-19 (evidence of causation is not required when the conduct is manifestly negligent and increased the likelihood of the injury that occurred); *see also Zuchowicz v. United States*, 140 F.3d 381, 390 (2d Cir. 1998) (Calabresi, *J*.) ("[I]f (a) a negligent act was deemed wrongful *because* that act increased the chances that a particular type of accident would occur, and (b) a mishap of that very sort did happen, this was enough to support a finding by the trier of fact that the negligent behavior caused the harm."). Operating an e-bike while high on marijuana, speeding, and riding close to parked cars is manifest negligence that clearly increases the likelihood of an accident. That is common sense. But even if the majority disagrees, we do not vacate bench trial findings for insufficient explanation unless we cannot exercise "intelligent appellate review." *Krieger v. Gold Bond Bldg. Prods.*, 863

---

[2] The majority goes even further, suggesting that the district court had to made evidentiary findings about "the time between the opening of the car door and its being hit by the bicycle," Maj. Op. at 21, "what speed would have been proper," *id*., and "how much further away from the parked cars" Dooley should have been riding, *id*. at 27. As the majority knows, it would be impossible to make such findings here. Importantly, the district court did conclude that Dooley had "an enormous amount of space for a bicycle to maneuver itself and to avoid cars," but unlike a "reasonable bicyclist," Dooley failed to "avoid coming close to parked cars" even though there was "abundant space" to do so. App'x at A-538. This case is thus unlike the "darting out" cases or others in which there was nothing the driver could have done differently to avoid the accident.

F.2d 1091, 1097 (2d Cir. 1988) (explaining that "nothing in the Rules requires . . . punctilious detail" (cleaned up)).   We plainly can here.

Second, the majority violates the principle of party presentation by recasting Dooley's arguments as a purported legal error.   "Under the Federal Tort Claims Act, . . . questions as to causation are . . . subject to the clearly erroneous standard," *Korek v. United States*, 734 F.2d 923, 927 (2d Cir. 1984), and "[w]here there are two permissible views of the evidence," as here, "the factfinder's choice between them cannot be clearly erroneous," *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) (citations omitted).[3]

To avoid this highly deferential standard of review, the majority reimagines Dooley's arguments.   His brief raised five numbered grounds for reversal, but the majority adopts none of them. *See* Appellant's Br. at 1-3.[4]   Instead, the majority extracts from

---

[3] The district court's findings expressly relied on witness credibility; it credited both witnesses' testimonies in part, including Disla's testimony on intoxication and Dr. Bizzak's estimate of the seven feet available in the lane.   *See* App'x at A534, A537- to -38.   And "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."   *Anderson v. City of Bessemer City*, 470 U.S. 564, 575-76 (1985) (citations omitted).   *But see* Maj. Op. at 23-24 (second guessing the district court's credibility determination based on speculation that it "ignored the impact that a non-monetary, disciplinary sanction might have on Disla's career").

[4] These were that (1) a violation of New York Vehicle and Traffic Law § 1214 excludes a finding of comparative negligence as a matter of law, (2) the district court erred in finding Dooley intoxicated, (3) the district court erred in finding that Dooley's intoxication contributed to the accident,

Dooley's factual challenges questions about "causation in all its forms." Maj. Op. at 18 n.10. This violates the principle of party presentation. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). "We do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do." *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, *J.*, concurring in denial of rehearing en banc).

The district court did its job, holding a trial and making reasonable findings of fact. Now we should do ours and afford those findings appropriate deference. I respectfully dissent.

---

(4) the district court erred in failing to award damages for future pain and suffering, and (5) the district court awarded inadequate damages. *See* Appellant's Br. at 1-3. At oral argument, Dooley abandoned some of these theories in favor of others. *See* Oral Arg. at 2:20-3:50 (disclaiming the first argument); *id*. at 8:45-10:59 (disputing, for the first time, the district court's causation finding). But "normally we will not consider arguments raised for the first time at or after oral argument." *United States v. Quinones*, 317 F.3d 86, 90 n.2 (2d Cir. 2003) (cleaned up).